(242 P.3d 1230)
No. 101,723

STATE OF KANSAS, *Appellee*, v. RANDY DEAN HART, *Appellant*.

Opinion filed November 19, 2010.

*Shawn E. Minihan,* of Kansas Appellate Defender Office, for appellant.

*Kristafer R. Ailslieger,* deputy solicitor general, and *Kendra M. Oakes,* legal intern, for appellee.

Before GREENE, P.J., GREEN and STANDRIDGE, JJ.

GREEN, J.: Randy Dean Hart appeals from his jury trial convictions and sentences for two counts of indecent liberties with a child in violation of K.S.A. 21-3503(a)(1). Hart raises eight arguments on appeal. Hart first argues that the evidence was insufficient to convict him of indecent liberties with a child in regard to the victim, C.H., because the evidence failed to show that C.H. was 14 years of age or older but less than 16 years of age when the alleged crime occurred. We disagree. Based on the testimony in this case, the legislature's intent as expressed through the statutory scheme of punishing sexual offenders for their crimes against children, and defense counsel's role in making sure the complaint was amended to be consistent with C.H.'s testimony that the crime occurred when C.H. would have been 14 years old, we determine that the evidence was sufficient to convict Hart of indecent liberties with a child.

Next, Hart maintains that the prosecutor committed misconduct during closing argument when she gave her personal opinion that the victims were credible. We again disagree. In reviewing Hart's argument, we find only one of the prosecutor's comments that was outside of the wide latitude afforded the prosecutor during closing arguments. Nevertheless, because this isolated comment was not gross and flagrant and did not demonstrate ill will on the prosecutor's part, we find that it was not so egregious as to warrant a new trial. Next, Hart argues that the trial court erred in providing a jury instruction for indecent liberties with a child that was broader than the charging document. Nevertheless, because the

record demonstrates that Hart's substantial rights have not been prejudiced by the giving of the instruction, his argument on this issue fails.

Next, Hart contends that the trial court erred in admitting prior bad acts evidence involving the victims to prove motive, intent, plan, and absence of mistake or accident under K.S.A. 60-455. Although Hart objected to the admission of the prior bad acts evidence in a motion in limine and during trial, we determine that his objection to this evidence at trial was untimely. As a result, we determine that Hart failed to adequately preserve the issue of the admissibility of the K.S.A. 60-455 evidence for appeal. Nevertheless, to get to the legal issue involved in this appeal, the State, during oral argument, stipulated that Hart's objection to the admission of the K.S.A. 60-455 evidence at trial was sufficiently timely to preserve the issue for appeal. Assuming arguendo that Hart's objection to this evidence was sufficiently timely, we would find no reversible error concerning this issue. Under K.S.A. 2009 Supp. 60-455(d), which would apply retroactively to Hart's case, the prior bad acts evidence in this case is admissible to show the relationship of the parties.

Hart also raises the following arguments in the present appeal: (1) that the trial court erred in giving a limiting instruction on the admitted K.S.A. 60-455 evidence; (2) that cumulative error denied him his constitutional right to a fair trial; (3) that his constitutional rights were violated when the trial court sentenced him to an aggravated sentence in the sentencing grid block; and (4) that his constitutional rights were violated when the trial court sentenced him to an increased sentenced based upon his criminal history. Nevertheless, we find no merit to any of these remaining arguments. Accordingly, we affirm.

## FACTS

In May 2008, Hart was charged with two counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(2)(A), a severity level 3 felony. The first count was based on an incident in which Hart allegedly fondled or touched the breasts of his daughter, C.H. (date of birth 09/15/90), while C.H.

was in the shower when she was 15 years old. The second count was based on an incident in which Hart allegedly fondled or touched the breasts of his former wife's cousin, N.B. (date of birth 03/18/91), when she was 14 years old.

Before trial, the State moved to admit prior crimes evidence under K.S.A. 2009 Supp. 60-455. The State asserted that Stacy Hart, who was Randy Hart's former wife and C.H.'s stepmother, had contacted the police to report concerns about the behavior of her 4-year-old daughter, K.H. According to the State, Stacy reported that when she contacted C.H. to ask whether she was aware of any improper contact between Hart and K.H., C.H. revealed improper contact between C.H. and Hart on many occasions. In addition, the State alleged that when N.B. became aware of Stacy's concerns regarding K.H., N.B. revealed to the police that Hart had improperly touched her on many occasions.

The State asserted that both C.H. and N.B. had reported prior incidents from the ages of approximately 7 years old to 14 or 15 years old. According to the victims' allegations, the contact would start out with Hart showing C.H. and N.B. pictures in Playboy magazines and then requiring C.H. and N.B. to emulate the poses used in the pictures while he watched. In addition, C.H. and N.B. alleged that Hart also attempted to get them to touch him, but they would not touch him.

The State argued that evidence of Hart's uncharged prior crimes against C.H. and N.B. was admissible under K.S.A. 2009 Supp. 60-455 to prove motive, plan, preparation, lack of mistake or accident, and the relationship of the parties. In addition, the State argued that the evidence regarding Stacy's concerns about K.H.'s behavior was admissible to explain how the allegations involving C.H. and N.B. came to the attention of law enforcement.

In responding to the State's motion to admit the prior crimes evidence under K.S.A. 2009 Supp. 60-455, Hart argued that the prior crimes evidence would potentially prejudice his right to a fair trial and that the probative value of the evidence would be outweighed by its prejudice. Alternatively, Hart argued that if the prior crimes evidence was allowed, the testimony should be restricted to similar incidents, that is, fondling of the breasts.

The trial court determined that the evidence involving Hart's prior uncharged acts against C.H. and N.B. was admissible under K.S.A. 2009 Supp. 60-455 and our Supreme Court's decision in *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006). Regarding Stacy's suspicions concerning K.H.'s behavior, however, the trial court determined that such evidence would be too inflammatory, that the prejudicial effect would outweigh any probative value, and that the evidence was not relevant to show any of the factors under K.S.A. 60-455.

## I. *C.H.'s Testimony*

At trial, C.H. testified about an incident that occurred while she was in the shower when Randy opened the shower curtain and touched her breast. C.H. testified that she thought she was 13 years old when the incident occurred but admitted that she might have been 14 years old when the incident occurred. C.H. testified that the shower incident was not the first time that Randy had touched her and that touching incidents had been occurring for a couple of years. According to C.H., she had told Belinda Brown, Stacy's mother, about Randy's improper touching. C.H. testified that Brown told her that "as long ago as it happened," she would not say anything about Randy's improper behavior.

According to C.H., the police in Caney, Kansas, had contacted her in 2007 and had asked her and her younger sister, D.M., about any improper touching by Randy. C.H. testified that both she and D.M. had told the police that nothing had happened. Nevertheless, C.H. testified that when Stacy later contacted her about Stacy's suspicions that Randy was improperly touching a younger sibling, C.H. agreed to go to the police about Randy's improper conduct towards her. When Stacy contacted C.H. about going to the police, Stacy and Randy were divorced, and Stacy was living with Brown. Stacy and Randy had four children together, and Stacy had residential custody of the children.

During cross-examination, C.H. admitted that she had gotten into an argument with Randy in May 2008, less than a week before charges were filed in this case, and had moved out of Randy's house. According to C.H.'s testimony, Randy had forbidden C.H.

from going to see her boyfriend because there were allegations that the boyfriend's father had gotten a high school girl pregnant. C.H. testified that Randy told her that if she went over to her boyfriend's house, she could move out of the house. According to C.H., she went over to her boyfriend's house and stayed there that night and then went to stay with her mother.

## II. *N.B.'s Testimony*

N.B. testified that the earliest age she could remember Randy improperly touching her was when she was approximately 7 years old. N.B. testified that she lived with Stacy and Randy from the time she was 4 years old until she was approximately 10 years old. When she stopped living with Stacy and Randy, N.B. moved in with Brown, who was N.B.'s aunt and legal guardian. According to N.B., when she was approximately 11 years old, she lived intermittently with Stacy and Randy, depending on where they were living.

According to N.B., when she was staying with Stacy and Randy, Randy would come into her room at night and touch her vaginal area. N.B. testified that she and C.H. shared a bed while they lived together and that they would both be there when Randy would come into the room at night. N.B. further testified that Randy would improperly touch C.H. and that it just "depended on who he chose to touch that night."

When questioned about the charged offense, N.B. testified that Randy had grabbed her breasts when she was approximately 14 years old. According to N.B., she suffered from muscular dystrophy and had to have help walking. N.B. testified that when she asked Randy to help her walk, he stood behind her and "grabbed her boobs." N.B. further testified that Brown walked by the room when this incident occurred. Brown testified that as she walked in the room, she saw Randy helping N.B. up from behind with both of his hands touching N.B.'s breasts.

N.B. testified that she had not reported the incidents earlier because Randy was her father figure, because she and C.H. were afraid of Randy, because they thought they had done something

wrong, and because they thought they would make Stacy mad if they told her about the incidents.

N.B. testified, however, that she decided to report Randy's conduct because she did not want the younger girls in the family to be molested by Randy. N.B. testified that Stacy took her to the police station to talk with law enforcement officers about the sexual abuse. Later, Stacy drove N.B. to the Sunlight Child Advocacy Center in El Dorado to be interviewed about the sexual abuse allegations. Finally, Stacy took N.B. to the hospital for a sexual assault examination.

Nicole Stump, coordinator of the Sunlight Child Advocacy Center, interviewed C.H. and N.B. in May 2008 about the alleged sexual abuse by Randy. According to Stump, both N.B. and C.H. revealed that they had been fondled by Randy. During her testimony at trial, Stump explained a variety of reasons why children are often very reluctant to disclose sexual abuse. Stump testified that children often do not want to hurt a family member or their family unit and they learn how to accommodate the abuser just to make it easier and not cause a problem.

III. *Defense Evidence*

During his testimony at trial, Randy denied that he committed the charged offenses. Moreover, Randy presented testimony from his sister-in-law, Cathleen Hart, who had driven C.H. to the 2007 interview with the Caney police. Cathleen testified that while she was driving C.H. home from the 2007 interview, C.H. told her that Randy had never touched her inappropriately.

Randy testified that before he was arrested for the sexual offenses, he had become concerned with the discipline at Brown's house after hearing his oldest son cursing at Stacy and hearing that his son's temper was becoming out of control at school. Randy further testified that several days after he told Stacy he was going to attempt to obtain residential custody of the children, the Kansas Department of Social and Rehabilitation Services contacted him about reports of physical abuse. Nevertheless, the allegations of abuse were later determined to be unsubstantiated.

Randy testified that after the reports of physical abuse were determined to be unsubstantiated, he was supposed to have the children for several weeks. Nevertheless, the children did not come to visit, and Randy was later arrested on the sexual abuse charges.

IV. *Amendment of Complaint*

At the close of the State's evidence, the trial court allowed the prosecutor to amend the complaint to allege that the charged incident with C.H. occurred between January 1, 2005, and July 1, 2005, when C.H. was 14 years old. Additionally, before jury instructions were given, the trial court allowed the prosecutor to amend both counts of the complaint to allege indecent liberties with a child in violation of K.S.A. 21-3503(a)(1), a level 5 person felony (instead of two counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504[a][2][A], a severity level 3 felony).

V. *Verdict and Sentencing*

The jury found Hart guilty of both counts of indecent liberties with a child. The trial court sentenced Hart to a controlling term of 80 months in prison.

ANALYSIS

I. *Sufficiency of the Evidence*

First, Hart contends that there was insufficient evidence to convict him of the indecent liberties charge under K.S.A. 21-3503(a)(1) involving C.H. when the evidence showed that C.H. was 13 (not between the ages of 14 and 16) when the alleged incident occurred.

When a defendant challenges the sufficiency of the evidence in a criminal case, an appellate court reviews all the evidence in the light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Trautloff*, 289 Kan. 793, 800, 217 P.3d 15 (2009).

K.S.A. 21-3503(a) defines the crime of indecent liberties with a child in relevant part as follows:

"Indecent liberties with a child is engaging in any of the following acts with a child who is 14 or more years of age but less than 16 years of age:

(1) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both."

Based on the amended charges in this case, in order for Hart to be convicted of indecent liberties with C.H. under K.S.A. 21-3503(a), the State was required to prove the following elements: (1) that Hart fondled or touched C.H. in a lewd manner, with the intent to arouse or to satisfy the sexual desires of either C.H. or Hart or both; (2) that C.H. was then a child 14 or more years of age but less than 16 years of age; and (3) that this act occurred on or about an unknown date between January 1, 2005, and July 1, 2005, in Elk County, Kansas. See PIK Crim. 3d 57.05.

The charge in the amended complaint, which was submitted to the jury, alleged that Randy had committed the crime of indecent liberties with C.H. between January 1, 2005, and July 1, 2005. Because C.H.'s date of birth was September 15, 1990, she would have been 14 years old between the dates of January 1, 2005, and July 1, 2005.

In arguing that the evidence clearly showed that C.H. was 13 years old (and not 14 or more years old but less than 16 years old) when the charged incident occurred, Hart points to the following testimony by C.H. elicited on direct examination:

"[Prosecutor:] That happened in Longton. Okay. Do you remember when it happened? . . .

"[C.H.:] Age. It would be like 6th or 7th grade.

"[Prosecutor:] But do you remember how old you were at the time. Yeah. Add her up.

"[C.H.:] Thirteen—thirteen, I think.

"[Prosecutor:] Okay. Would it be possible that you might have been 14?

"[C.H.:] Possibly. I was 13 at the beginning of the year and 14 at the end, so.

"[Prosecutor:] Okay. All right. Do you remember what time of year?

"[C.H.:] To guess, I would say like spring.

"[Prosecutor:] And so you could have not been in the 7th grade in the spring. What year were you born, [C.H.]?

"[C.H.:] Nineteen ninety.

"[Prosecutor:] Okay. So if you were 14, would that have been like 2004 or something like that?

"[C.H.:] Yeah.

"[Prosecutor:] Spring perhaps? You are not real sure about that?

"[C.H.:] I would have to sit and figure it out."

Contrary to Hart's argument, this testimony did not clearly establish that C.H. was 13 years old when the alleged incident occurred. Rather, C.H.'s testimony demonstrates that she was uncertain as to her exact age and the date when the alleged incident occurred. According to C.H., she was "thirteen, I think" when the alleged incident occurred but she could have "possibly" been 14 years old. Later, on redirect examination, C.H. admitted that she had previously testified she was 14 years old but testified that she could not remember the year the alleged incident occurred:

"[Prosecutor:] Now, when you testified just a little bit ago while this incident occurred, I believe, when you were about 14, correct?

"[C.H.:] Yeah.

"[Prosecutor:] So actually this happened probably a little bit longer ago than 2006, because were you 14 in 2006?

"[C.H.:] No. I don't remember years at all. Even if it was in El Dorado, they were asking and I couldn't remember at all."

As evidenced by C.H.'s testimony, this case does not fall within the line of cases where the State failed to put on direct evidence at trial to establish the victim's age when the alleged crime occurred. See *State v. Perez-Rivera*, 41 Kan. App. 2d 579, 203 P.3d 735 (2009) (holding that evidence was insufficient to show that victim was 18 years of age or older when alleged battery occurred where State presented no direct evidence of victim's age and jury should not have been permitted to make an inference about victim's age based on its own observations of victim's physical appearance and demeanor at trial); *State v. Sanders*, No. 100,595, unpublished opinion filed April 2, 2010 (holding that although State presented no direct evidence of victim's age when alleged crime occurred, jury reasonably inferred from proven evidence that victim was 16 years of age or older when alleged incident occurred). Rather, the prosecutor directly elicited testimony from C.H. regarding her age when the alleged crime occurred.

In reading C.H.'s testimony and her uncertainty as to whether she was 13 or 14 years old when the alleged incident occurred, one

can see the difficulty that the prosecutor would be faced with in charging Hart and in submitting the proper charge to the jury. Under the statutes in effect when Hart committed the alleged acts, if C.H. was younger than 14 years old when the alleged crime occurred, then the prosecutor should have charged aggravated indecent liberties with a child under K.S.A. 21-3504(a)(3)(A) (Furse 1995). If C.H. was 14 or more years of age but less than 16 years of age when the alleged incident occurred, then the prosecutor should have charged indecent liberties with a child under K.S.A. 21-3503(a)(1).

The parties have not pointed to any decision by this court or our Supreme Court involving a similar issue where the victim is unable to recall at what precise age the alleged incident occurred. In *Barger v. State*, 587 N.E.2d 1304 (Ind. 1992), however, the Indiana Supreme Court has addressed a similar issue. In that case, the alleged child molestation occurred around the victim's 12th birthday, and the State could not prove definitively whether the victim was 11 years old or 12 years old when the child molestation occurred. Under the Indiana statutory scheme, molesting a child who was 12 through 15 years old was a class D felony, while molesting a child less than 12 years old was a class C felony. The defendant was charged with and found guilty of the class D felony. On appeal, the defendant argued that because the State could not prove that the victim was over 12 years of age, the evidence was insufficient to prove beyond a reasonable doubt all of the elements of child molestation as a class D felony. The Indiana Court of Appeals agreed with the defendant's argument and reversed his conviction.

The Indiana Supreme Court determined, however, that the evidence was sufficient to sustain the defendant's conviction for a class D felony and reversed the Indiana Court of Appeals' decision. After analyzing the history and design of the child molestation statutes to prescribe harsher penalties for sexual offenses committed against younger children, the Indiana Supreme Court recognized the difficulty faced by a prosecutor in charging a molestation crime when the victim's age was near the dividing line between felony classes when the alleged crime occurred:

"It is difficult for children to remember specific dates, particularly when the incident is not immediately reported as is often the situation in child molesting cases. The exact date becomes important only in limited circumstances, including the case where the victim's age at the time of the offense falls at or near the dividing line between classes of felonies.

"While one might always wish for statutes drafted so as to make the job of interpretation easier, we think it is inconceivable that the legislature intended through Ind. Code § 35-42-4-3 to absolve defendants who molest children around their twelfth birthdays such that it is impossible to tell whether the victim was eleven or twelve at the time of the offense. In effect, the prosecutor strictly construed the statute against the State by charging Barger with the class D felony rather than the class C felony. It is beyond question that Barger's victim was under sixteen years of age, as required for the class D felony. To read Ind. Code § 35-42-4-3 as providing no protection to a victim who was molested around her twelfth birthday would render the statute absurd given the legislature's long and constant history of providing more severe penalties for crimes against victims under the age of twelve." 587 N.E.2d at 1307.

As a result, the Indiana Supreme Court held that when it is difficult to tell whether a child molestation victim was 11 or 12 years old when the alleged crime occurred, it is sufficient to charge and convict the defendant of the lesser felony because the child was clearly under the age of 16 years old, as required for the lesser felony. The court noted that its conclusion was based upon the legislative intent to punish offenders more harshly when they commit crimes against younger children and upon the notion of strict construction of criminal statutes. 587 N.E.2d at 1307-08.

Here, similar to what was outlined in *Barger*, the statutory scheme in Kansas is aimed at punishing offenders more harshly when the offenders commit crimes against younger children. Under K.S.A. 21-3503(a)(1), engaging in lewd fondling or touching with a child who is 14 or more years of age but less than 16 years of age is a severity level 5 person felony. When the same crime is committed with a child who is less than 14 years of age, the offense is a severity level 3 person felony. See K.S.A. 21-3504(a)(3)(A) (Furse 1995).

As a general rule, criminal statutes must be strictly construed in favor of the accused. *Trautloff*, 289 Kan. at 796-97. Moreover, courts should construe statutes to avoid unreasonable results and

should presume that the legislature does not intend to enact useless or meaningless legislation. 289 Kan. at 797.

If this court were to read K.S.A. 21-3503(a)(1) and K.S.A. 21-3504(a)(3)(A) (Furse 1995) together as providing no protection to a victim who was sexually abused through fondling or touching when she was around 13 or 14 years old, this would be an unreasonable result. The legislature's intent, as expressed through the plain language of the statutes, was to provide a more severe punishment for the sexual offense of lewd fondling or touching against victims less than 14 years old. When the victim of such a sexual offense has not immediately reported the offense and is unable to definitively remember whether he or she was 13 or 14 years of age when the incident occurred, the prosecutor should strictly construe the statutes against the State and charge the lower severity level.

In the present case, there was evidence showing that C.H. was around 14 years of age when the alleged incident occurred. In reviewing the sufficiency of the evidence issue in this case, we bear in mind that we must look at the evidence in the light most favorable to the State. See *Trautloff*, 289 Kan. at 800. Moreover, as an appellate court, we do not reweigh the evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. *State v. Swanigan*, 279 Kan. 18, 23, 106 P.3d 39 (2005); *State v. Curls*, 36 Kan. App. 2d 547, 548-49, 145 P.3d 73 (2006).

As discussed previously, C.H. testified that she thought she was 13 years old when the alleged incident occurred but stated that she "possibly" was 14 years old. C.H. later agreed with the prosecutor that she had testified that she was 14 years old. Indeed, when the prosecutor later asked the trial court to allow her to amend the complaint to conform to C.H.'s testimony that she was 14 years old when the alleged incident occurred, defense counsel did not object but instead stated, "I understand why she's doing that and I think it makes no difference in what my client is charged with, except just changes the time frame."

In its appellate brief, the State points out that defense counsel actively worked to forestall the amending of the complaint to allege the incident occurred when C.H. would have been 13 years old. It is understandable why defense counsel would not want the charge

to reflect C.H.'s age as 13 years old since that would move the crime into aggravated indecent liberties with a child under the statutory scheme. When the State amended the complaint following C.H's testimony, defense counsel questioned the amendment and pointed out how the amendment would put the incident as occurring in 2004 when C.H. was 13 years old. Defense counsel asserted that the year in the amended complaint should be changed to either 2005 (when C.H. would have been 14 years old) or 2006 to conform to C.H.'s testimony. The complaint was then amended to place the time frame of the incident in 2005. Thus, to some extent, the alleged error was invited by the defense and should not be complained of on appeal. See *State v. Bello*, 289 Kan. 191, 193, 211 P.3d 139 (2009) (A defendant may not invite error and then complain of the error on appeal.).

In considering the testimony that is before this court, the legislature's intent as expressed through the statutory scheme of punishing sex offenders for their crimes against children, and defense counsel's role in having the complaint amended to charge that the alleged crime occurred on dates when C.H. would have been 14 years old, we reject Hart's argument and determine that there was sufficient evidence to convict Hart of indecent liberties with a child under K.S.A. 21-3503(a)(1).

II. *Prosecutorial Misconduct*

Next, Hart maintains that the prosecutor committed misconduct during closing arguments when she gave her personal opinion that C.H. and N.B. were credible.

A. *Standards of Review*

A claim of prosecutorial misconduct based on comments made during voir dire, opening statements, or closing argument which are not evidence will be reviewed on appeal even when a contemporaneous objection was not made at the trial level. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009).

Appellate review of an allegation of prosecutorial misconduct involving improper comments to the jury requires a two-step analysis. First, the appellate court decides whether the comments were outside the wide latitude that the prosecutor is allowed in discuss-

ing the evidence. Second, if misconduct is found, the appellate court must determine whether the improper comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. McReynolds*, 288 Kan. 318, 323, 202 P.3d 658 (2009).

In the second step of the two-step analysis, the appellate court considers the following three factors:

" '(1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. None of these three factors is individually controlling. Moreover, the third factor may not override the first two factors unless the harmless error tests of both K.S.A. 60-261 [refusal to grant new trial is inconsistent with substantial justice] and *Chapman v. California*, 386 U.S. 18, [22,] 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) [conclusion beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial], have been met. [Citations omitted.]' [Citation omitted.]" *McReynolds*, 288 Kan. at 323.

### B. *Offering Personal Opinion*

Hart first maintains that during closing arguments, the prosecutor improperly vouched for the credibility of C.H., when she stated as follows: "The difficulty of this regardless of what the parent did or didn't do, or might have done or should have done, is not really what's relevant in this matter. *What is relevant in this matter is whether or not you believe C.H. I think you should.*" (Emphasis added.)

In general, a prosecutor may not offer juries his or her personal opinion as to the credibility of witnesses. Nevertheless, a prosecutor has wide latitude to craft arguments that include reasonable inferences to be drawn from the evidence. That includes explaining to the jury what it should look for in assessing witness credibility, especially when the defense has attacked the credibility of the State's witnesses. *State v. Stone*, 291 Kan. 13, 19, 237 P.3d 1229 (2010).

A prosecutor should not comment on a witness' credibility because "expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony, not commentary on the evidence of the case." *State v. Pabst*, 268 Kan. 501, 510, 996 P.2d 321

(2000). "When a case develops that turns on which of two conflicting stories is true, it may be reasonable to argue, based on evidence, that certain testimony is not believable. However, the ultimate conclusion as to any witness' veracity rests solely with the jury." *Pabst*, 268 Kan. at 510.

The State concedes that the prosecutor's statement, "What is relevant in this matter is whether or not you believe [C.H.]. I think you should," was in error. The State admits that "[a]lthough the prosecutor was attempting to discuss the importance of weighing the evidence and not being distracted by unrelated issues, she clearly slipped and added a comment of personal belief." Indeed, the record demonstrates that the prosecutor, by injecting her personal opinion that the jury should believe C.H., was improperly vouching for C.H.'s credibility.

Hart also argues that the prosecutor injected her personal opinion in closing argument when, after explaining to the jury that C.H. came forward because there were concerns about younger children in the family, the prosecutor stated, "To me a legitimate reason for a child to come forward [is to] try to protect somebody else." The prosecutor's comment that protecting another child from harm was a legitimate reason to come forward about sexual abuse was not a direct comment on the credibility of a witness. Rather, it was a comment about a reasonable inference to be drawn from the evidence.

In fact, several sentences before the prosecutor made the comment, she told the jury, "You can weigh that. You can determine that. You can decide whether or not she is believable. Do that also in the weight of Nicole Stump's testimony regarding how these children process this." The prosecutor then discussed Stump's testimony and the evidence concerning why C.H. and N.B. reported the alleged incidents. Placed in context, the prosecutor's comment appeared to be "her attempt to summarize the conclusion to which an assessment of the evidence would lead the jury, rather than unqualified assertions that the jury should simply believe the prosecutor's own assessment of the witness." *Stone*, 291 Kan. at 20 (determining that prosecutor's statement to "[u]se this law and you will find-talk about how credible [the victim] is compared to him"

was within wide latitude allowed in discussing evidence in closing argument). The prosecutor's comment did not constitute improper vouching for the credibility of a witness.

Finally, Hart maintains that the prosecutor again injected her opinion in closing argument when she stated as follows:

"If you think about [the reasons C.H. and N.B. did not report the prior incidents] and you think about that the reason that he [*sic*] came forward, *I think and I believe* that you should and there is evidence sufficient to show that these crimes were committed beyond a reasonable doubt."

Nevertheless, Hart takes the prosecutor's comment out of context. Just before the above comment, the prosecutor told the jury that it should be weighing the credibility of the witnesses and thinking about the witnesses' reasons and Hart's defense:

"When I was going through the questioning of the jury I brought up an example to that and one of the jurors . . . kind of went off on that, saying where is the victim to the crime that nobody else saw? Would that mean that the crime didn't occur? And wouldn't you want to have a jury at least weigh your credibility, even against somebody else's? That's what we are talking about here. You weighing the credibility of these witnesses. Thinking about their reasons. Thinking about the defense that Mr. Hart has put on.

"If you think about those and you think about the reason that he [*sic*] came forward, I think and I believe that you should and there is evidence sufficient to show that these crimes were committed beyond a reasonable doubt. The girls' story makes sense. The reason they delayed in telling makes sense. You heard part of the reason why from Nicole Stump. Kids just don't disclose. They just don't, until they see maybe it may be happening to someone they feel they have to protect. Therefore, I'm going to ask you to go back and find him guilty on both counts."

The context surrounding the prosecutor's comment demonstrates that the prosecutor was telling the jury that she thought and believed that the jury should think about the evidence, weigh the credibility of the witnesses, and think about the reasons that the victims came forward. This comment was a proper comment on the evidence and how the jury should consider the evidence and was not outside the wide latitude afforded the prosecutor during closing argument.

Thus, based on the previous analysis, the only comment that was outside of the wide latitude allowed the prosecutor during closing

argument was the prosecutor's statement: "What is relevant in this matter is whether or not you believe [C.H.]. I think you should." Nevertheless, this comment was not gross and flagrant, nor did it demonstrate ill will on the prosecutor's part. The prosecutor's comment was isolated, and the prosecutor referred the jury several times to its duty to weigh the evidence. Further, at the beginning of her closing argument, the prosecutor told the jury that her statements did not constitute evidence in the case:

"So what I'm going [to] do here is try to summarize what I think I want you to consider when you go back into the jury room and make your deliberations. And I would also point out, of course, anything that I say, if you don't particularly agree with what I say, is not evidence. Judge already read that instruction. It's a little funny that you guys get sworn, the witnesses get sworn, lawyers, we never get sworn in. There is a reason for that. Okay."

With this statement, it is clear that the prosecutor was not attempting to engage in gross and flagrant conduct to divert the jury from its role in reweighing the evidence. Although the evidence was not overwhelming in this case, the prosecutor's comments in closing argument were not so egregious as to warrant a new trial. See *Stone*, 291 Kan. at 20.

## III. *Jury Instruction on Indecent Liberties With a Child*

Next, Hart argues that the trial court erred in providing a jury instruction for indecent liberties with a child that was broader than the charging document.

Hart concedes that he did not object to the instruction for indecent liberties with a child. "An appellate court reviewing a district court's giving or failure to give a particular instruction applies a clearly erroneous standard where a party neither suggested an instruction nor objected to its omission." *State v. Martinez*, 288 Kan. 443, 451, 204 P.3d 601 (2009); see K.S.A. 22-3414(3). "An instruction is clearly erroneous only if the reviewing court is firmly convinced there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." *Martinez*, 288 Kan. at 451-52.

The complaint in this case alleged that the charged crimes were committed with the intent to satisfy the sexual desires of Hart. The

trial court, however, broadened the complaint by instructing the jury that the State needed to establish that the crimes were committed with the intent to arouse or satisfy the sexual desires of the victim or Hart, or both.

"A jury instruction on the elements of a crime which is broader than the information charging the crime is erroneous. Such an error may be excused only where the substantial rights of the defendant have not been prejudiced." *State v. Wade*, 284 Kan. 527, Syl. ¶ 3, 161 P.3d 704 (2007).

"If a defendant's ability to prepare and present a defense has been compromised by an erroneously broadened jury instruction, the substantial rights of the defendant have been prejudiced. Likewise, the defendant's substantial rights are prejudiced if the defendant would not have testified if he or she had known that the erroneously broadened instruction would be given." *Wade*, 284 Kan. 527, Syl. ¶ 4.

Hart essentially raises no argument as to how his substantial rights were prejudiced other than making conclusory statements that the jury "could have come to the conclusion that Mr. Hart intended to arouse the sexual desires of [N.B.] or [C.H.]" and that "[i]t is more likely that the jury would have found that his intent was to satisfy the sexual desires of both of them."

Hart does not explain how the broadened jury instruction compromised his ability to prepare and present his defense in the case. Moreover, Hart has not even indicated that the broadened jury instruction would have affected his decision to testify or the testimony that he gave in the case. Further, a review of the appellate record fails to reveal any substantial prejudice to Hart based upon his general denial of the allegations. As the State points out, Hart's defense would have been the same regardless of the methods of intent charged in the complaint.

Under these circumstances, we determine that the giving of the broadened jury instruction did not constitute reversible error.

IV. *Admission of K.S.A. 60-455 Evidence*

Next, Hart contends that the trial court erred in admitting the prior bad acts evidence involving C.H. and N.B. to prove motive,

intent, plan, and absence of mistake or accident under K.S.A. 60-455.

A. *Standards of Review*

When reviewing a district court's decision concerning the admission of evidence, an appellate court first determines whether the evidence is relevant. All relevant evidence is admissible unless statutorily prohibited. *State v. Riojas*, 288 Kan. 379, 382, 204 P.3d 578 (2009). Evidence is relevant if it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b).

There are two elements of relevant evidence: a materiality element and a probative element. *State v. Houston*, 289 Kan. 252, 261-62, 213 P.3d 728 (2009). Evidence is probative if it has " 'any tendency in reason to prove' " a fact. *State v. Reid*, 286 Kan. 494, 505, 186 P.3d 713 (2008) (citing K.S.A. 60-401[b]). Whether evidence has probative value is reviewed for abuse of discretion. In determining whether the evidence is "material," analysis focuses on whether the fact to be proved is " ' "significant under the substantive law of the case and properly at issue. [Citation omitted.]" ' " *Reid*, 286 Kan. at 505. Appellate review for materiality is de novo. *State v. Wells*, 289 Kan. 1219, 1226, 221 P.3d 561 (2009). Nevertheless, even if evidence is both probative and material, the trial court must still determine whether the probative value of the evidence outweighs its potential for producing undue prejudice. Appellate courts review this determination for abuse of discretion. 289 Kan. at 1227; see also *State v. Dixon*, 289 Kan. 46, 69-70, 209 P.3d 675 (2009) (applying the above standards of review to an evidentiary issue involving non-K.S.A. 60-455 evidence).

Once relevance is established, the trial court must then apply the statutory rules controlling the admission and exclusion of evidence. These statutory rules are treated either as a matter of law or as an exercise of the trial court's discretion, depending upon the rule in question. Therefore, the standard of review that is applicable on appeal will depend upon which rule the court applied to determine the admissibility of the evidence at issue. *Riojas*, 288 Kan. at 383.

## B. *K.S.A. 60-455*

The version of K.S.A. 60-455 in effect in October 2008, when Hart went to trial, provided as follows:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The determination of whether evidence was properly admitted under K.S.A. 60-455 involves several steps. A court must determine that the evidence is relevant to prove a material fact, for example, motive, knowledge, and identity. The court must also determine that the material fact is disputed. In addition, the court must determine that the probative value of the evidence outweighs its potential for producing undue prejudice. Finally, the court must give a limiting instruction telling the jury of the specific purpose for admission. *State v. Prine*, 287 Kan. 713, 724, 200 P.3d 1 (2009).

Error in the admission of or instruction upon K.S.A. 60-455 evidence is not automatically reversible. Rather, it is to be evaluated on appeal under either K.S.A. 22-3414 or K.S.A. 60-261. *State v. Gunby*, 282 Kan. 39, Syl. ¶ 4, 144 P.3d 647 (2006).

## C. *Trial Court's Ruling on State's Motion to Admit K.S.A. 60-455 Evidence*

On the day of trial, before voir dire, the trial court heard arguments on the State's motion to admit K.S.A. 2009 Supp. 60-455 evidence. In determining that the prior bad acts involving C.H. and N.B. were admissible under K.S.A. 2009 Supp. 60-455, the trial court stated as follows:

"[T]he Court finds that the evidence involving . . . alleged prior acts with [C.H.] and [N.B.], including touching each other or viewing pornographic materials, that's been indicated here by the State, that that evidence should be allowed to come in under 60-455. Also under *Gunby*.

"And specifically the Court finds that that testimony of these prior acts is relevant and that the probative value of allowing that evidence is not outweighed by any prejudicial effect that it might have on the defendant. Specifically the Court

finds that 60-455 that it would be admissible under motive and plan. And in regard to the wheelchair reaching around situation, that evidence could certainly be considered lack of mistake or accident. And also the Court finds that this evidence would show an inclination or a method of or a system of operation."

Just before jury deliberations, the trial court instructed the jury that the K.S.A. 60-455 evidence was being offered to show motive, intent, plan, lack of mistake or accident, and inclination or method.

### D. *No Contemporaneous Objection*

In his appellate brief, Hart asserts that he objected to the introduction of the K.S.A. 60-455 evidence. The only objection that Hart points to at trial is one that was made during C.H.'s testimony in which C.H. was asked about whether Hart had ever improperly touched her before the alleged incident.

Before C.H.'s testimony, however, the State had already introduced testimony from N.B. about Hart's prior bad acts towards both N.B. and C.H. In particular, N.B. had already testified about how Hart came into the room that N.B. and C.H. shared at night and touched them inappropriately. N.B. testified that Hart would touch her vaginal area and would also improperly touch C.H. while both girls were present in the room. Hart has failed to point to anywhere in the record where he objected to N.B.'s testimony about his prior bad acts or where he made a continuing objection to this evidence. Moreover, in our review of the record, we have been unable to find where Hart made a specific and contemporaneous objection as to the admissibility of the K.S.A. 60-455 evidence during N.B.'s testimony. See *State v. Yarrington*, 238 Kan. 141, 145, 708 P.2d 524 (1985) (Failure to make contemporaneous objection when the evidence is offered will not resurrect an opportunity to object to the same evidence later.).

Indeed, to preserve an issue relating to the admissibility of evidence for appeal, a party must make a timely and specific objection. K.S.A. 60-404. Even if there is an in limine ruling that the evidence is admissible, where an objection to the evidence is not made when it is introduced at trial, the defendant is generally precluded from challenging its admissibility on appeal. *State v. Carapezza*, 286 Kan. 992, Syl. ¶ 7, 191 P.3d 256 (2008) (where defendant objected

to evidence only on hearsay grounds, she failed to preserve for appeal the issue of the inadmissibility of the evidence under K.S.A. 60-455); *State v. Francis*, 282 Kan. 120, 138, 145 P.3d 48 (2006) (where defendant failed to object at trial to the admission of evidence under K.S.A. 60-455, he was precluded from raising the issue on appeal); *State v. Young*, 14 Kan. App. 2d 21, 37, 784 P.2d 366, *rev. denied* 245 Kan. 788 (1989) (To preserve a K.S.A. 60-455 issue for appeal, a defendant must object on that ground at trial.).

More recently, our Supreme Court in *State v. King*, 288 Kan. 333, 348-49, 204 P.3d 585 (2009), held that evidentiary claims must be preserved by a contemporaneous objection at trial in order for those claims to be reviewed on appeal:

"[T]he legislature's intent in enacting K.S.A. 60-404 is clear: a party must lodge a timely and specific objection to the admission or exclusion of evidence in order to preserve the evidentiary question for review.

"We stress today the importance of this legislative mandate. K.S.A. 60-404 dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial. Although our past decisions may have relaxed the objection requirement in the evidentiary context, this practice not only has led to confusion as to the standards that should be applied on appeal, but also has de-emphasized the role of counsel at trial and has impaired the gate-keeping function of district courts in this state. See *Baker*, 204 Kan. at 611. More importantly, this practice of reviewing evidentiary questions when no objection has been lodged runs contrary to the legislature's clearly stated intent in K.S.A. 60-404.

". . . From today forward, in accordance with the plain language of K.S.A. 60-404, evidentiary claims—including questions posed by a prosecutor and responses to those questions during trial—must be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal."

Since *King*, our Supreme Court has consistently "been refusing to review an evidentiary issue without a timely and specific objection even if the issue involves a fundamental right." *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010); see *State v. Richmond*, 289 Kan. 419, 429-30, 212 P.3d 165 (2009) (where our Supreme Court expressed concern that the contemporaneous objection rule "case-law exceptions would soon swallow the general statutory rule"); *Hollingsworth*, 289 Kan. at 1256-57.

In the present case, when Hart objected to C.H.'s testimony, the evidence about Hart's prior improper touching of C.H. and

N.B. had already been admitted into evidence through N.B.'s testimony. The contemporaneous rule requires a party to make a *timely* objection. See K.S.A. 60-404; *State v. Sims*, 265 Kan. 166, Syl. ¶ 6, 960 P.2d 1271 (1998) (A timely and specific objection to the admission of evidence at trial must be made in order to preserve the issue on appeal.); Barbara, Kansas Law and Practice, Lawyer's Guide to Kansas Evidence § 1.4, p. 9 (5th ed. 2009) (An objection should be made as soon as it is apparent as to the admissibility of the evidence.); *State v. Clements*, 252 Kan. 86, 88-89, 843 P.2d 679 (1992) (holding that failure to make timely objection to testimony will not be salvaged by later motion to strike the testimony). Hart's late objection to the prior bad acts evidence, which had already been admitted through N.B.'s testimony, does not satisfy the contemporaneous objection rule under K.S.A. 60-404.

As Hart acknowledges in his appellate brief, C.H.'s testimony about Hart's prior bad acts was brief and general. C.H. testified that the shower incident was not the first time that Hart had touched her and that the touching incidents had gone on for a couple of years. Unlike N.B.'s testimony, there were no specific facts given. C.H. did not testify about the location where the touching incidents occurred or the manner in which they occurred. C.H. did not even testify about where he touched her. In short, C.H. did not add any additional facts to what N.B. had already testified. By the time that C.H. testified, the jury had already heard about Hart's prior bad acts and in more specific detail than C.H.'s testimony.

Because Hart failed to make a timely objection when the prior bad acts evidence was first introduced at trial, he failed to adequately preserve the issue of the admissibility of the K.S.A. 60-455 evidence for appeal. See *State v. Jones*, 267 Kan. 627, 637, 984 P.2d 132 (1999) (Nothing short of an objection at the time evidence is offered satisfies the requirement of a contemporaneous objection.); *State v. Trotter*, 245 Kan. 657, 659, 783 P.2d 1271 (1989) (Failing to contemporaneously object to the admission of the evidence waives any claimed error.).

Nevertheless, to get to the legal issue involved in this appeal, the State, during oral argument, stipulated that Hart's objection to the

admission of the K.S.A. 60-455 evidence at trial was sufficiently timely to preserve the issue for appeal. "A stipulation has . . . been defined as an agreement, admission, or concession made in judicial proceedings by the parties thereto or their attorneys." *Bodle v. Balch*, 185 Kan. 711, 714, 347 P.2d 378 (1959). Assuming arguendo that Hart's objection to the K.S.A. 60-455 evidence was sufficiently timely, we would reject his argument under K.S.A. 2009 Supp. 60-455(d).

E. *State's Argument Concerning the 2009 Amendments to K.S.A. 60-455*

In its appellate brief, the State contends that the 2009 amendment to K.S.A. 60-455 is applicable to the present case and that the admission of the prior bad acts evidence was admissible under the 2009 amendment.

The State's argument involves interpretation of a statute. Interpretation of a statute presents a question of law over which an appellate court's review is unlimited. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. 290 Kan. at 47. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Raschke*, 289 Kan. 911, 914, 219 P.3d 481 (2009).

When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature's intent. *State v. Trautloff*, 289 Kan. 793, 796, 217 P.3d 15 (2009).

As the State points out, in April 2009, the legislature amended K.S.A. 60-455 to change the procedure for admitting evidence of prior sexual misconduct in criminal prosecutions for sex offenses. K.S.A. 2009 Supp. K.S.A. 60-455(d) provides in relevant part as follows:

"(d) Except as provided in K.S.A. 60-445, and amendments thereto, in a criminal action in which the defendant is accused of a sex offense under articles 34, 35 or 36 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto, evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative."

Thus, under K.S.A. 2009 Supp. 60-455(d), when a defendant is charged with a sex offense under the applicable statutes, evidence of the defendant's other sexual misconduct is admissible and may be considered for its bearing on any matter to which it is relevant and probative.

The State maintains that the 2009 amendments to K.S.A. 60-455 were a direct response to our Supreme Court's decision in *Prine*, 287 Kan. at 737. Our Supreme Court in *Prine*, after determining that the defendant's prior bad acts were inadmissible to prove intent, plan, and absence of mistake or accident under K.S.A. 60-455(b), stated the following regarding evidence of prior sexual abuse in sexual offense cases:

"We are compelled to make one final set of brief comments on the K.S.A. 60-455 issues raised by this case.

"Extrapolating from the ever-expanding universe of cases that have come before us and our Court of Appeals, it appears that evidence of prior sexual abuse of children is peculiarly susceptible to characterization as propensity evidence forbidden under K.S.A. 60-455 and, thus, that convictions of such crimes are especially vulnerable to successful attack on appeal. This is disturbing because the modern psychology of pedophilia tells us that propensity evidence may actually possess probative value for juries faced with deciding the guilt or innocence of a person accused of sexually abusing a child. In short, sexual attraction to children and a propensity to act upon it are defining symptoms of this recognized mental illness. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, pp. 527-28 (4th ed.1994) (302.2-Pedophilia). And our legislature and our United States Supreme Court have decided that a diagnosis of pedophilia can be among the justifications for indefinite restriction of an offender's liberty to ensure the provision of treatment to him or her and the protection of others who could become victims. See K.S.A. 59-29a01 *et seq.*; *Kansas v. Crane*, 534 U.S. 407, 409-10, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002); *Kansas v. Hendricks*, 521 U.S. 346, 356-60, 371, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997) (Kansas' Sexually Violent Predator Act narrows the class of persons eligible for confinement to those who find it difficult, if not impossible, to control their dangerousness.). It is at least ironic that propensity evidence can be part of the

support for an indefinite civil commitment, but cannot be part of the support for an initial criminal conviction in a child sex crime prosecution.

"Of course, the legislature, rather than this court, is the body charged with study, consideration, and adoption of any statutory change that might make K.S.A. 60-455 more workable in such cases, without doing unconstitutional violence to the rights of criminal defendants. It may be time for the legislature to examine the advisability of amendment to K.S.A. 60-455 or some other appropriate adjustment to the statutory scheme."

Thus, our Supreme Court recognized that evidence of prior sexual abuse in sexual abuse cases might have a bearing different from evidence of other prior bad acts and suggested that the legislature examine the advisability of amending K.S.A. 60-455. Within less than 4 months after *Prine* was filed, the legislature enacted the amended version of K.S.A. 60-455 to add subsection (d).

F. *Applicability of K.S.A. 2009 Supp. 60-455(d)*

Although K.S.A. 2009 Supp. 60-455(d) was not in effect when Hart's trial occurred in this case, the State argues that the statutory change, which was procedural in nature, is applicable to Hart's pending appeal. The State points out that our Supreme Court has stated that "[w]hen an applicable statute is amended while an appeal is pending, and counsel for both sides have had an opportunity to brief and argue the amended statute, the appellate court will consider and construe the amended version of the statute." *State ex rel. Secretary of SRS v. Bohrer*, 286 Kan. 898, 904, 189 P.3d 1157 (2008).

In its appellate brief, the State has thoroughly briefed and argued the applicability of the 2009 amendment to K.S.A. 60-455. As required by Supreme Court Rule 6.01 (2009 Kan. Ct. R. Annot. 37), the State's brief would have been served on Hart's appellate attorney. Then, under Rule 6.01(e), Hart's attorney would have had the opportunity to file a reply brief and address the State's argument concerning the application of K.S.A. 2009 Supp. 60-455(d) within 15 days after service of the State's brief. Moreover, under Supreme Court Rule 5.02 (2009 Kan. Ct. R. Annot. 34), Hart's attorney could have requested an extension of time to file the reply brief, if necessary to adequately address the applicability

of K.S.A. 2009 Supp. 60-455(d). Instead, Hart's attorney chose to file nothing.

Normally, when a statute is amended, the change is applied prospectively. Nevertheless, if the amendment is procedural or remedial in nature and does not prejudice the substantive rights of the parties, then the amended statute is to be applied retroactively to cases pending on appeal. *Tonge v. Werholtz*, 279 Kan. 481, 486, 109 P.3d 1140 (2005); *State v. Stegman*, 41 Kan. App. 2d 568, 572, 203 P.3d 52 (2009). As related to criminal law and procedure, substantive laws define criminal acts and prescribe punishments. Procedural laws provide or regulate the steps by which a defendant is tried and punished. *Tonge*, 279 Kan. at 487.

"When no legislative mandate is controlling, whether a statute is to be given retroactive effect will depend on whether it proscribes certain conduct or assigns a punishment for that conduct or whether it merely establishes the method by which the conduct is to be evaluated." *State v. Brooker*, 27 Kan. App. 2d 396, 399, 4 P.3d 1180, *rev. denied* 269 Kan. 935 (2000).

The 2009 amendment to K.S.A. 60-455 neither changed the definition of a criminal act nor prescribed a new punishment. Instead, K.S.A. 2009 Supp. 60-455(d) changed the manner in which prior bad acts evidence, specifically, other sexual abuse evidence, can be admitted into evidence when a defendant is on trial for a sexual offense. As a result, the 2009 amendment to K.S.A. 60-455 applies retroactively to the present case.

Importantly, this result is consistent with that reached in *State v. Boggs*, 287 Kan. 298, 305-06, 197 P.3d 441 (2008), where our Supreme Court held that its decision in *Gunby*, which was filed after the conclusion of Boggs' trial, would be applied retroactively to govern the admission of K.S.A. 60-455 evidence in Boggs' case. In so holding, our Supreme Court cited *Griffith v. Kentucky*, 479 U.S. 314, 328, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987), where the Court explained that " ' "a new rule for the conduct of criminal prosecutions is to be applied . . . to all cases, state or federal, *pending on direct review or not yet final*." ' " 287 Kan. at 306. Similarly, it appears that the 2009 amendment to K.S.A. 60-455, which prescribes a new rule for the conduct of criminal prosecu-

tions, should be applied to the present decision, which was pending on direct review when the amendment was passed.

## G. *Ex Post Facto Law*

The State further argues that there is no constitutional ex post facto bar to applying K.S.A. 2009 Supp. 60-455(d) to the present case.

Our Supreme Court in *State v. Chamberlain*, 280 Kan. 241, Syl. ¶ 4, 120 P.3d 319 (2005), set forth the following regarding ex post facto violations:

"The United States Supreme Court has set forth four categories of ex post facto violations: (1) Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action; (2) every law that aggravates a crime, or makes it greater than it was, when committed; (3) every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime, when committed; and (4) *every law that alters the legal rules of evidence and receives less or different testimony than the law required at the time of the commission of the offense in order to convict the offender.*" (Emphasis added.)

The best argument that Hart could make concerning an ex post facto violation would be under the fourth category, that is, that the 2009 amendment to K.S.A. 60-455 altered a legal rule of evidence in a manner that permitted less or different testimony to convict him.

Nevertheless, the United States Supreme Court has stated that "no *ex post facto* violation occurs if the change in the law is merely procedural and does 'not increase the punishment, *nor change the ingredients of the offence or the ultimate facts necessary to establish guilt.*' [Citation omitted.]" (Emphasis added.) *Miller v. Florida*, 482 U.S. 423, 433, 96 L. Ed. 2d 351, 107 S. Ct. 2446 (1987). Similarly, our Supreme Court in *Chamberlain* stated that "[i]n order for a law to be considered ex post facto, two elements must be present: (1) The law must be retrospective, applying to events occurring before its enactment and (2) it must alter the definition of criminal conduct or increase the penalty by which a crime is punishable." 280 Kan. 241, Syl. ¶ 5.

Courts in other jurisdictions have determined that there is no ex post facto violation when a rule of evidence has relaxed or changed

the standard for admission of other acts of child sexual abuse when the defendant was charged with a child sexual abuse crime. For example, in *McLean v. State*, 854 So. 2d 796, 802-03 (Fla. App. 2003), the court, in rejecting the appellant's argument that a rule of evidence relaxing the manner in which evidence concerning prior child sexual abuse was admissible at trial for child sexual abuse charge constituted an ex post facto violation, stated:

"In this case, [the appellant] can argue only that the law altered the rules of evidence in a manner that permitted a conviction with less or different testimony. We reject this argument because a prima facie case of lewd molestation could be established by the testimony of the victim both before and after this amendment to the rule of evidence. This rule permits additional testimony that may cause a jury to be more likely to believe the victim, but this is a qualitative change in the law that does not alter substantial personal rights."

See *Ortiz v. State*, 869 So. 2d 1278 (Fla. Dist. App. 2004).

In that same vein, the court in *James v. State*, 204 P.3d 793 (Okla. Crim. 2009), stated that the issue in determining whether an ex post facto violation occurred under the fourth category, which we mentioned previously, is whether the change affected the quantum of evidence necessary to support a conviction. The court further stated that the defendant's conviction for child sexual abuse did not, at least as a matter of law, stand or fall on whether the other-crimes testimony was admissible. The court determined that legislative enactments, like the one applicable in that case, that merely permit the jury to consider certain kinds of evidence for certain purposes and are applied to conduct committed before enactment, do not raise ex post facto concerns. 204 P.3d at 795.

See also *Thompson v. Missouri*, 171 U.S. 380, 387, 43 L. Ed. 204, 18 S. Ct. 922 (1898) ("[W]e cannot perceive any ground upon which to hold a statute to be ex post facto which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offense was committed."); *Carmell v. Texas*, 529 U.S. 513, 538, 146 L. Ed. 2d 577, 120 S. Ct. 1620 (2000) (citing *Collins v. Youngblood*, 497 U.S. 37, 43 n.3, 111 L. Ed. 2d 30, 110 S. Ct. 2715 [1990]) (recognizing that Court's earlier definition of ex post facto law was " 'not in-

tended to prohibit the application of new evidentiary rules in trials for crimes committed before the changes' ").

Here, while the introduction of evidence under the 2009 amendment to K.S.A. 60-455 might cause a jury to find the victim more credible, it did not change the "ingredients" of the charged offenses or the ultimate facts necessary to establish a defendant's guilt. The 2009 amendment does not change the quantum of evidence necessary to convict a defendant. The same evidence could establish the charged offenses both before and after the 2009 amendment. Moreover, the 2009 amendment to K.S.A. 60-455 did not increase the punishment against Hart or change the definition of the criminal conduct charged against him. As a result, we find no ex post facto violation in applying K.S.A. 2009 Supp. 60-455(d) to the present case.

H. *Admission of the Prior Bad Acts Evidence under K.S.A. 2009 Supp. 60-455(d)*

The State asserts that the 2009 amendment to K.S.A. 60-455 removed the requirement that evidence of prior sexual misconduct be related to a material and disputed fact before it can be admitted in a sex crime prosecution. The State argues that under K.S.A. 2009 Supp. 60-455(d), the evidence of prior sexual misconduct need only be relevant and its probative value not outweighed by its potential unfair prejudice.

Thus, the State maintains that the trial court's decision to admit the prior sexual evidence can be upheld under K.S.A. 2009 Supp. 60-455 because the trial court (1) found that the evidence was relevant to prove that Hart had a motive and plan to molest C.H. and N.B., that Hart did not touch C.H. and N.B. by accident, and that the charged conduct was part of a method of operation used by Hart; and (2) balanced the probative value of the evidence against its prejudicial value.

The problem with the State's argument is that the legislature did not remove subsection (b), which relates to the admissibility of prior crimes evidence "to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident," from K.S.A. 60-455 or exempt

that subsection in sex crime prosecutions. Moreover, there is no language in K.S.A. 2009 Supp. 60-455(d) excepting it from the application of subsection (b) of 60-455. Therefore, it would seem that in order to admit evidence to prove one of the material facts under K.S.A. 2009 Supp. 60-455(b), the analysis set forth in *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006), and consistently followed by this court and our Supreme Court would still need to be applied.

More important, when none of the material facts under K.S.A. 2009 Supp. 60-455(b) is in dispute, it is difficult to see the probative value of the prior sexual misconduct evidence. In order for evidence to be admitted under K.S.A. 2009 Supp. 60-455(d), one of the requirements is that the evidence must be "probative" to the matter on which it is being admitted. In the Notes on Use, Section II(C)(9) to PIK Crim. 3d 52.06 (the limiting instruction for evidence admitted under K.S.A. 2009 Supp. 60-455[b]), the PIK Committee noted that the requirement under K.S.A. 2009 Supp. 60-455(d) that the evidence be "probative" arguably restricts admissibility of evidence under that subsection "somewhat." The PIK Committee then refers the reader to its discussion of "probative value" in Section II(B)(2)(b), which states as follows:

"*Probative Value*. Probative value consists of more than logical relevancy. *Evidence of other crimes has no real probative value if the fact it is supposed to prove is not substantially at issue. In other words, the factor or factors being considered (e.g. intent, motive, knowledge, identity, etc.) must be substantially at issue before a trial court should admit evidence of other crimes to prove such factors. State v. Bly*, 215 Kan. [168,] 176[, 523 P.2d 397 (1974)]." (Emphasis added.)

If Hart had made a timely and specific objection to the evidence of prior bad acts, we would have determined that none of the material facts for which the evidence was offered under K.S.A. 2009 Supp. 60-455(b) was in dispute or substantially at issue and that the prior bad acts evidence was not probative for those facts. Because Hart never offered an innocent explanation for the alleged acts, intent and absence of mistake or accident were never placed in dispute. See *Prine*, 287 Kan. at 728; *State v. Davidson*, 31 Kan. App. 2d 372, Syl. ¶¶ 2-3, 65 P.3d 1078 (2003). Moreover, the evidence fails to demonstrate that Hart had a particular modus

operandi, method, motive, or plan for committing the alleged acts. Further, Hart's prior bad acts were not similar enough to the crimes charged in the present case to be probative to plan. See *Prine*, 287 Kan. at 729-36. Thus, while the evidence might still have been relevant, the prior bad acts evidence had no real probative value.

Moreover, any minimal probative value of the evidence to establish one of the material facts under K.S.A. 2009 Supp. 60-455(b) was significantly outweighed by its prejudicial value. The prior bad acts evidence involved numerous instances of sexual abuse committed against the victims, beginning when one of the victims was 7 years old. When comparing the probative value of the prior sexual misconduct evidence to the facts under K.S.A. 2009 Supp. 60-455(b) with its prejudicial value, the scales would easily be weighted towards prejudice.

### I. *Relationship of the Parties*

In its motion to admit the prior bad acts evidence, the State also argued that the evidence was admissible to prove the relationship of the parties.

Before its decision in *Gunby*, our Supreme Court in *State v. Crossman*, 229 Kan. 384, 387, 624 P.2d 461 (1981), held that in cases involving illicit sexual relations between an adult defendant and a child victim, evidence of prior acts of a similar nature between the defendant and the same victim was admissible, without the safeguards required by K.S.A. 60-455, when the evidence was not offered for the purpose of proving distinct offenses, but rather to establish the relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the complaining witness' testimony as to the act charged. The *Gunby* court, however, later disapproved of the *Crossman* decision and held that the admissibility of any and all other crimes and civil wrongs evidence would be governed by K.S.A. 60-455 and its attendant safeguards. 282 Kan. at 56-57.

Nevertheless, with the enactment of K.S.A. 2009 Supp. 60-455(d), which has relaxed the admissibility requirements of prior sexual abuse evidence in child sexual abuse cases, and our Supreme

Court's recognition in *Prine* that evidence of prior sexual abuse has a different bearing in child sexual abuse cases, it is apparent that the analysis in *Crossman* has gained new life.

Before *Gunby*, the *Crossman* reasoning was followed in *State v. McHenry*, 276 Kan. 513, 78 P.3d 403 (2003), where our Supreme Court held that evidence of prior similar conduct with the complaining witness was admissible independent of K.S.A. 60-455:

"Like *Crossman*, McHenry's defense was to attack the veracity of his daughter and the other family members. McHenry's theory was that the rest of his family concocted allegations of sexual abuse in order to remove him from the home. He called a defense witness who testified that the daughter had stated she could get whatever she wanted from McHenry by claiming he had sexually abused her. Given McHenry's attack on his family's credibility, the evidence of his prior sexual abuse of his daughter falls squarely within the Crossman rule. The evidence showed that the relationship between McHenry and his daughter had involved a continuing course of conduct (ongoing sexual abuse) with McHenry gaining control through the extension or withholding of privileges. The evidence provided information for the jury to consider in assessing the defense: the timing of the past complaint in the context of other family dynamics at the time; the fact that past complaints had not resulted in action by those in authority; and a long standing system of rewards which might explain the daughter's failure to come forward." 276 Kan. at 520-21.

Importantly, when prior sexual abuse is committed against the same victim, the prior sexual abuse is connected to the charged crimes based on the relationship between the defendant and the victim. This connection does not occur when the prior sexual abuse is committed against a different victim. See *People v. Jones*, 417 Mich. 285, 287-88, 335 N.W.2d 465 (1983). Here, because the prior sexual abuse occurred against the same victims, the evidence is relevant and probative based on the relationship between the defendant and victims. See *State v. Reyes*, 744 N.W.2d 95, 102-03 (2008) (Prior bad acts evidence involving the same victim "has relevance on the underlying criminal charge because it shows the nature of the relationship between the alleged perpetrator and the victim." . . . "The evidence was thus not offered to show a *general propensity* to be attracted sexually to young girls, but instead to demonstrate the nature of the defendant's relationship and feelings toward a *specific* individual.").

In the present case, the evidence of Hart's prior sexual abuse of C.H. and N.B. was highly relevant to show the relationship of the parties and to corroborate the testimonies of N.B. and C.H. as to the sexual acts charged. Hart's defense in this case was to portray C.H. as an angry teenager who had made up the allegations after she had recently gotten into an argument with Hart and moved out of Hart's house because Hart would not allow her to spend time at her boyfriend's house. Moreover, Hart attempted to portray Stacy as an angry ex-wife who would go to the extreme of soliciting her cousin, N.B., along with her aunt Brown, and her former step-daughter, C.H., to allege child sexual abuse so that Stacy would not have to go through a child custody battle with Hart.

With this case turning on the credibility of C.H., N.B., and Brown, evidence of Hart's prior sexual abuse of C.H. and N.B. was relevant to show Hart's relationship with C.H. and N.B. and probative to show the victims' actions before, during, and after the acts giving rise to the charged sexual offenses. By being presented with evidence that the sexual abuse had taken place over a number of years, beginning at an early age and in the secret manner described by N.B., the jury could more adequately assess Hart's defense, the victims' credibility, the previous denial by C.H. of any sexual abuse by Hart, the lengthy time period between the alleged incidents and the victims' reports to the police, and the difficulty that C.H. had in relating the alleged incident at trial.

Moreover, based on the facts of this case, the probative value of such evidence on the issue of the relationship of the parties would outweigh its prejudicial value. Although the prior sexual abuse evidence was prejudicial in that there were incidents occurring over a period of several years, with at least one of the victims being only 7 years old when the incidents began, the evidence was highly probative: The evidence would help the jury to understand why the victims failed to immediately report the incidents and to understand the surrounding circumstances leading up to their reports of sexual abuse.

Although the trial court did not rely on the material fact of relationship of the parties in admitting the other crimes evidence under K.S.A. 60-455, we could affirm the trial court's decision on

that ground. See *State v. Blaurock*, 41 Kan. App. 2d 178, 197, 201 P.3d 728 (2009). "[I]f a trial court reaches the right result, its decision will be upheld even if it provided an incorrect reason or engaged in an improper legal analysis." *State v. Murray*, 285 Kan. 503, 533, 174 P.3d 407 (2008). In *State v. Reid*, 286 Kan. 494, Syl. ¶ 7, 186 P.3d 713 (2008), our Supreme Court recognized that a trial court's decision to admit evidence under K.S.A. 60-455 will not be reversed if it was right, but for the wrong reason. Based on the circumstances present in this case, we find no reversible error in the admissibility of the prior bad acts evidence.

### J. *Propensity*

In its appellate brief, the State also asserts that under K.S.A. 2009 Supp. 60-455(d), the evidence of prior sexual abuse was admissible as relevant to establish Hart's propensity to commit sexual misconduct. To support its argument on this issue, the State cites several federal cases that have interpreted Federal Rule of Evidence 413(a) to specifically allow admission of prior sexual misconduct in sex crimes cases for the purpose of showing the defendant's propensity to commit such crimes. See *United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008) ("Rule 413(a) . . . allows the admission of evidence of prior sexual assaults for any relevant purpose, including to show propensity, in sexual assault cases."); *United States v. Benally*, 500 F.3d 1085, 1089-90 (10th Cir. 2007) ("These rules provide an exception to the general rule . . . which prohibits the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts."). Although we have already determined that the prior sexual abuse evidence is admissible under K.S.A. 2009 Supp. 60-455(d) to establish relationship of the parties, we will briefly address the State's argument.

Under the plain language of K.S.A. 2009 Supp. 60-455, it is very apparent that the legislature did not intend for 60-455(d) evidence to be admitted just to show propensity. K.S.A. 60-455(a) provides that evidence of other crimes or civil wrongs is not admissible to prove a defendant's propensity to commit the crime in question:

"Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove

such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion."

As a result, such prior crimes or civil wrongs evidence is not admissible to show the defendant has a criminal disposition and was thus more likely to have committed the crime in question. The public policy for this rule is that prior crimes evidence should not be considered to prove the defendant's mere propensity to commit the charged crime. See *Reid*, 286 Kan. 494 (K.S.A. 60-455 designed to eliminate danger evidence will be considered to prove the defendant's mere propensity to commit charged crime); *State v. Garcia*, 285 Kan. 1, 169 P.3d 1069 (2007) (under plain, unambiguous language of K.S.A. 60-455, evidence of prior crimes, civil wrongs cannot be admitted to prove defendant's propensity to commit charged crime); *Gunby*, 282 Kan. at 48.

Importantly, the legislature did not exempt sex crimes from the prohibition of K.S.A. 60-455(a) in its 2009 amendments to the statute. When we construe the plain language of subsections (a) and (d) of K.S.A. 2009 Supp. 60-455 in harmony with each other, it would seem that K.S.A. 2009 Supp. 60-455(d) would still be subject to the prohibition under K.S.A. 2009 Supp. 60-455(a). But see PIK Crim. 3d 52.06, Notes on Use, Section II(C)(9) (recognizing that K.S.A. 2009 Supp. 60-455[d] "clearly represents legislative approval in cases like *Prine* of the admission for the propensity inference of other acts of sexual molestation of a child, even without striking similarities").

More important, however, is the fact that the legislature chose to include the "relevant" and "probative" requirements in K.S.A. 2009 Supp. 60-455(d). In discussing the differences between Federal Rules of Evidence 413(a) and 414(a) and K.S.A. 2009 Supp. 60-455(d), the PIK Committee in PIK Crim. 3d 52.06, Notes on Use, Section II(C)(9), stated as follows:

"Subsections (d)-(g) are patterned after Federal Rules of Evidence 413(a) and 414(a). However, there are changes that may affect how subsection (d) is applied. For example, the language 'Except as provided in K.S.A. 60-445,' was added by the House Judiciary Committee to make it clear that other offense evidence still may be excluded when the value of the evidence is substantially outweighed by

the risk of prejudice, an issue that had to be litigated under Federal Rule 413. The Senate Judiciary Committee added the requirement that the evidence be 'probative' in addition to 'relevant.' This addition arguably restricts admissibility somewhat. See the discussion of 'probative value' in Section II(B)(2)(b), *supra*. Thus, although a prosecutor could invoke subsection (d) when defendant is charged with fondling his six-year-old niece on the couch at his home to argue that testimony that defendant raped an elderly stranger in the woods twenty years earlier 'is admissible' because it is relevant to show a propensity for sexual misconduct, the trial judge still may exclude it as lacking probative value or because of the risk of prejudice. The extent to which subsection (d) changes Kansas law will not be clear until appellate decisions interpret it."

In this case, the prior crimes evidence met the requirements of K.S.A. 2009 Supp. 60-455(d) because the evidence involved the same victims as the charged offenses and it was very relevant and highly probative as to the relationship of the parties. The situation would be different, however, if the prior sexual abuse occurred with persons other than the alleged victims. Absent any legitimate issues for which prior bad acts are relevant and probative, including those listed in K.S.A. 2009 Supp. 60-455(b), the admission of prior bad acts evidence involving a different victim would allow the admission of general propensity evidence. This would violate the general rule prohibiting propensity evidence. See 2009 Supp. K.S.A. 60-455(a); *Gunby*, 282 Kan. at 48.

Our Supreme Court has recognized at least three types of prejudice that can follow from the admission of other crimes and civil wrongs evidence:

" ' "First a jury might well exaggerate the value of other crimes as evidence proving that, because the defendant has committed a similar crime before, it might properly be inferred that he committed this one. Secondly, the jury might conclude that the defendant deserves punishment because he is a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Thirdly, the jury might conclude that because the defendant is a criminal, the evidence put in on his behalf should not be believed." ' " *Gunby*, 282 Kan. at 48-49 (quoting *State v. Davis*, 213 Kan. 54, 58, 515 P.2d 802 [1973]).

Thus, if prior sexual abuse evidence is admitted without tying it to a legitimate issue other than general propensity, it would be very difficult to envision a circumstance where the probative value of the prior sexual abuse evidence involving a different victim could

ever exceed the prejudice that the evidence would invite: The defendant committed a previous crime, so the defendant must have committed the charged crime. The admission of such evidence could carry with it the potential to violate a criminal defendant's fundamental right to a fair trial. See *Gunby*, 282 Kan. at 49 (recognizing that practice of admitting evidence independent of K.S.A. 60-455 carried potential to violate criminal defendant's fundamental right to fair trial).

Finally, the *Reyes* court warned that "[i]n settings involving prior sexual abuse with persons other than the alleged victim, there is a substantial risk that ' "a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment." ' " 744 N.W.2d at 102 n.1 (quoting *Old Chief v. United States*, 519 U.S. 172, 181, 136 L. Ed. 2d 574, 117 S. Ct. 644 [1997]).

### K. *Jury Instruction on K.S.A. 60-455 Evidence*

Next, Hart argues that the trial court erred in giving a limiting instruction on the admitted K.S.A. 60-455 evidence where the trial court did not properly explain the relationship between the prior bad acts, the K.S.A. 60-455 exceptions, and the facts.

Although Hart objected to the expansion of the jury instruction concerning the K.S.A. 60-455 evidence to include additional exceptions, he did not raise the specific argument that he now asserts on appeal. As a result, Hart concedes that this court should apply the clearly erroneous standard of review.

"An appellate court reviewing a district court's giving or failure to give a particular instruction applies a clearly erroneous standard where a party neither suggested an instruction nor objected to its omission." *State v. Martinez*, 288 Kan. 443, 451, 204 P.3d 601 (2009); see K.S.A. 22-3414(3). "An instruction is clearly erroneous only if the reviewing court is firmly convinced there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." *Martinez*, 288 Kan. at 451-52.

The trial court in this case gave the jury instruction regarding K.S.A. 2009 Supp. 60-455 evidence that is outlined in PIK Crim.

3d 52.06. Our Supreme Court has stated the following regarding the use of PIK instructions:

" ' " "The use of PIK instructions is not mandatory, but is strongly recommended. The pattern instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. They should be the starting point in the preparation of any set of jury instructions. If the particular facts in a given case require modification of the applicable pattern instruction or the addition of some instruction not included in PIK, the trial court should not hesitate to make such modification or addition. However, absent such need, PIK instructions and recommendations should be followed.' " [Citation omitted.]' [Citation omitted.]" *State v. Dixon*, 289 Kan. 46, 67, 209 P.3d 675 (2009).

As the State points out, there was no need for the trial court to define the specific terms of motive, intent, plan, lack of mistake or accident, or method that were included in the instruction. See *State v. Patton*, 33 Kan. App. 2d 391, 396, 102 P.3d 1195 (2004), *rev. denied* 279 Kan. 1009 (2005) (" '[t]he trial court need not define every word or phrase in the instructions. It is only when the instructions as a whole would mislead the jury or cause it to speculate, that additional terms should be defined.' "). The jury should not have been confused or misled by the terms that were part of the PIK instruction.

Further, based on the above analysis, it was unnecessary to give this limiting instruction because the evidence was admissible independent of any of the factors under K.S.A. 2009 Supp. 60-455(b). As a result, the relationship of the parties evidence would not require a limiting instruction. See *Crossman*, 229 Kan. 384, Syl. ¶ 1 (failure to give limiting instruction not error when evidence admitted to show relationship of parties independent of factors under K.S.A. 60-455); *State v. Bly*, 215 Kan. 168, 175-76, 523 P. 2d 397 (1974) (evidence disclosing another criminal offense with direct bearing and relation to commission of offense itself is not governed by K.S.A. 60-455 and is admissible without limiting instruction).

L. *Cumulative Error*

Next, Hart contends that the combination of errors in this case denied him his constitutional right to a fair trial.

"Cumulative error, considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of the circumstances substantially prejudiced the defendant and denied him or her a fair trial. No prejudicial error may be found under the cumulative error doctrine if the evidence against the defendant is overwhelming. [Citation omitted.]" *Dixon*, 289 Kan. at 71.

Our Supreme Court has stated that "[c]umulative error will not be found when the record fails to support the errors raised on appeal by the defendant. [Citations omitted.] One error is insufficient to support reversal under the cumulative effect rule. [Citation omitted.]" *State v. Cofield*, 288 Kan. 367, 378, 203 P.3d 1261 (2009).

Based on the previous analysis, the only error in this case was the prosecutor's lone statement in which she vouched for C.H.'s credibility. Hart failed to make a timely and specific objection to the admission of the prior bad acts evidence to show motive, intent, plan, lack of mistake or accident, or method. Moreover, the prior bad acts evidence is admissible under K.S.A. 2009 Supp. 60-455(d) to show relationship of the parties. As a result, there was no error in the admission of the prior bad acts evidence. As to the prosecutor's lone statement, she did not exhibit any ill will or gross and flagrant misconduct. Consequently, there was no prejudicial error in this case to warrant the granting of a new trial.

## M. *Aggravated Sentence in Sentencing Grid Block*

Next, Hart maintains that his rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated when the trial court sentenced him to the aggravated sentence in the sentencing grid block, without having those facts proven to a jury beyond a reasonable doubt, in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

It is puzzling why Hart is making this argument when the record discloses that the trial court sentenced Hart to the standard sentence (49 months) in the sentencing grid block for his conviction under count 1 of the amended complaint and to the mitigated sentence (31 months) for his conviction under count 2 of the amended complaint. Because the trial court did not sentence Hart

to the aggravated sentence in the applicable sentencing grid block, Hart's argument on this issue fails.

Moreover, even if Hart had been sentenced to an aggravated sentence in the applicable sentencing grid block, Hart concedes that our Supreme Court has decided this issue adversely to his position in *State v. Johnson*, 286 Kan. 824, 190 P.3d 207 (2008). This court is duty bound to follow our Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). As a result, Hart's argument would fail.

N. *Use of Criminal History*

Finally, Hart argues that his rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated when the trial court sentenced him to an increased sentence, based upon his criminal history, without requiring that his criminal history be included in the complaint and proven to the jury beyond a reasonable doubt.

Hart concedes that our Supreme Court has decided this issue adversely to his position in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). This court is duty bound to follow our Supreme Court precedent, absent some indication the court is departing from its previous position. *Merrills*, 37 Kan. App. 2d at 83. As a result, Hart's argument on this issue fails.

Affirmed.