NOT DESIGNATED FOR PUBLICATION

No. 114,219

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JESUS MUNOZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed February 24, 2017. Affirmed.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Kendall Kaut*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., GREEN, J., and BURGESS, S.J.

*Per Curiam*: A jury convicted Jesus Munoz of one count of aggravated indecent liberties with a child and two counts of electronic solicitation of a child. Munoz appeals his convictions, making the following four arguments: (1) that the trial court erred in instructing the jury on electronic solicitation; (2) that insufficient evidence supported his electronic solicitation convictions; (3) that the prosecutor made two misstatements of law during his closing arguments entitling Munoz to a reversal of his convictions; and (4) that even if the preceding errors do not require reversal individually, the errors require

1

reversal when considered cumulatively. Nevertheless, we determine that all of Munoz' arguments fail. Accordingly, we affirm.

On November 19, 2013, J.M. caught M.M., her 13-year-old daughter, with an iPhone. This surprised J.M. because M.M. was not allowed to have a cell phone. J.M. took the iPhone away from M.M. Upon searching through the iPhone, J.M. found photos of M.M. in her bra and underwear, which had been sent to a contact listed as "JMZ." J.M. contacted A.M., her husband and M.M.'s father, about the photos. Together, J.M. and A.M. looked through the iPhone and discovered a photo of Jesus Munoz, who was 44 years old, saved to the phone. J.M. and A.M. recognized Munoz because he is the brother of one of their friends and uncle of one of M.M.'s friends. Because A.M. and Munoz had exchanged phone numbers in the past, A.M. looked at his cell phone contact list to determine if the phone number he had saved for Munoz was the same as the phone number M.M. had saved for "JMZ." The phone numbers for Munoz and JMZ matched.

J.M. and A.M. took M.M. to the police station. At the police station, Detective Daryl Ludolph interviewed M.M. During that interview, M.M. told Detective Ludolph that Munoz had given her the iPhone. M.M. told Detective Ludolph that she had sent photos of herself in her bra and underwear to Munoz but no nude photos. M.M. told Detective Ludolph that Munoz had not asked her to have sex. M.M. told Detective Ludolph that she and Munoz had only "French kissed." M.M. signed a consent form, allowing Detective Ludolph to search the iPhone. Then, Detective Ludolph downloaded the contents of the iPhone. Although Detective Ludolph found the photos of M.M. in her bra and underwear on the phone, he determined that Munoz had not committed any crimes because "[n]one of the photographs shows any sex organs and [were therefore] deemed non criminal." A few days later, Detective Ludolph returned the iPhone to J.M.

Once J.M. got the iPhone back, J.M. began searching through the photos and texts exchanged between M.M. and Munoz more thoroughly. J.M. found a text from Munoz to

2

M.M. stating, "I can't wait to make love to you," as well as other texts where Munoz and M.M. planned on meeting up to have sex. J.M. believed that those texts had to be criminal, therefore she contacted Detective Ludolph again. Detective Ludolph reviewed the photos and texts he had previously downloaded from the iPhone. Detective Ludolph determined that Munoz' conduct seemed to be criminal because it appeared that he was soliciting M.M. to have sex with him. At trial, Detective Ludolph admitted that he made a mistake when he determined that there was nothing criminal about Munoz French kissing M.M.; he also admitted that he had not actually reviewed the text messages exchanged between M.M. and Munoz before telling J.M. that nothing criminal had happened.

Regardless, after being made aware that M.M. and Munoz were exchanging texts in which they planned to meet up and have sex, Detective Ludolph interviewed M.M. again. During that interview, M.M. admitted that on the morning of her 13th birthday, which was in November 2013, Munoz picked her up a little ways from her school bus stop, drove her to a grocery store parking lot, French kissed her, and touched her right breast outside of her clothes. M.M. explained that afterwards, Munoz drove her to her middle school.

Several days after the second interview, J.M. discovered that Munoz had given M.M. a second cell phone—a Nokia. Upon looking through the Nokia, J.M. found more photos and texts exchanged between M.M. and Munoz. M.M. and Munoz exchanged texts and photos on the Nokia from October 2, 2013, through November 30, 2013. J.M. turned the Nokia over to Detective Ludolph.

Based on the alleged kissing and touching of M.M., Munoz was arrested and charged with one count of aggravated indecent liberties with a child for engaging in lewd fondling of a child under 14 years old, an off-grid person felony in violation of K.S.A. 2013 Supp. 21-5506(b). Based on the contents of the texts on the iPhone and Nokia, Munoz was also charged with two counts of electronic solicitation of a child believed to

3

be under the age of 14 years old, with the goal of enticing or soliciting that child to commit or submit to aggravated indecent liberties with a child. Both counts were severity level 1 person felonies in violation of K.S.A. 2013 Supp. 21-5509.

At trial, the State presented the testimony of J.M., A.M., Detective Ludolph, and M.M. J.M. and A.M. testified about discovering the iPhone, discovering the Nokia, and their contact with the police. Detective Ludolph testified about his interviews with M.M., his review of the iPhone and Nokia, and his mistake of originally telling J.M. and A.M. that Munoz had not done anything criminal.

M.M. testified that she originally met Munoz when she was 8 years old while playing at the house of her friend, who is Munoz' niece. M.M. testified that she did not see Munoz again until July 2013, when she was 12 years old. M.M. explained that while playing at the friend's house, she went up to Munoz, told him that she liked him and gave him her phone number. Evidently, unbeknownst to her parents, M.M. had figured out how to text and talk on her iPod. M.M. testified that about a week after she gave Munoz her iPod phone number, Munoz asked her if she "would go out with him." M.M. testified that she told Munoz that she would go out with him, and they began texting and talking to one another through the iPod.

At some point in August 2013, M.M.'s parents took her iPod away. M.M. testified that when she told Munoz her iPod had been taken away, he gave her the iPhone so they could keep communicating. M.M. explained that Munoz wanted the iPhone back in early September 2013, but he gave her the Nokia in exchange. M.M. further explained that Munoz returned the iPhone to her around mid-November 2013, meaning she had both the iPhone and Nokia for a time. M.M. explained, however, that she had the iPhone after its return for only a couple of days before her mother caught her using it in the car on November 19, 2013.

4

M.M. testified that because she had the iPhone after its return for only a couple of days, she knew there were not as many texts and photos on it as the Nokia. M.M. explained that when she was interviewed by Detective Ludolph on November 19, 2013, she revealed only as much information about her and Munoz' relationship as she believed would be found on the iPhone. M.M. testified that she did not tell Detective Ludolph the full extent of her and Munoz' relationship because she did not want Munoz to get in trouble. M.M. testified that she loved Munoz. She further testified that she wanted to marry him and have children with him.

Regarding the details of her and Munoz' relationship, M.M. testified that she and Munoz would try to meet at different places, like her friend's house, Walmart, Target, or church and "make out." In November 2013, on her 13th birthday, M.M. described how she intentionally missed her school bus so Munoz could pick her up in his car and take her to school. M.M. explained that on the way to school, Munoz took her to a grocery store parking lot and gave her presents. M.M. explained that while sitting in his car in the grocery store parking lot, Munoz French kissed her and touched her breast. M.M. testified that Munoz then dropped her off at her middle school.

Regarding photos of herself, M.M. testified about taking and sending several photos of herself in just her bra and underwear to Munoz on the iPhone and Nokia. Thirty-eight photos, many of which contained images of M.M. in just her bra and underwear, were admitted into evidence.

Regarding the texts exchanged, M.M. reviewed the texts downloaded from the iPhone, Exhibit 2, and photos of the texts on the Nokia, Exhibit 1. M.M. confirmed that she and Munoz exchanged the texts within Exhibits 1 and 2. Both Exhibits were admitted into evidence and published to the jury over Munoz' objection.

The texts on the iPhone included multiple texts from Munoz to M.M. requesting that she send him photos of herself wearing little clothing, a bikini, or no clothing. There were also many texts exchanged about how M.M. and Munoz could meet up and have sex on Friday, November 22, 2013. The following quotes are just a few of the texts that were exchanged on the iPhone between M.M. and Munoz on November 18, 2013, and November 19, 2013, exactly as they appear in the Exhibits, including the grammar and punctuation errors:

"[Munoz:] . . . so are we on for Friday then?

"[M.M.:] yep

"[M.M.:] you ready

. . . .

"[Munoz:] I'm pretty sure you won't want to go to school that day after spending the night with me, lol yes, I'm ready . are you kidding? there's nothing more that I

. . . .

"[M.M.:] I cant wait until Friday

"[Munoz:] I'm happy you are my girl. I know I'm anxious about Friday as well. I wish it was today. I can't wait to make love to you

. . . .

"[M.M.:] So will my age ever mess up are relationship? Like will you ever want someone your own age

"[Munoz:] no way baby , I want you just like you are. you are my dream girl. . . .

. . . .

"[Munoz:] what are u doing right now

"[M.M.:] getting out of shower

"[Munoz:] oh yummy can I join u next time

"[M.M.:] lol maybe

"[Munoz:] maybe? I'll kiss you under the shower . . . . I would kiss your whole body under the running water.

. . . .

"[Munoz:] I can't wait till I kiss those legs and that belly button and everything else for that matter like your breast they look nice"

6

The Nokia also included numerous texts from Munoz to M.M. requesting that she send him photos of herself wearing little clothing, a bikini, or no clothing. Moreover, the Nokia included texts about Munoz impregnating M.M. with a "baby girl" and how they had both enjoyed kissing and touching one another when they met on her birthday. Last, on a few occasions when M.M. did not immediately respond to Munoz' texts, Munoz told M.M. that their relationship was over, that she needed to delete his texts, and that she needed to provide him with proof that she had deleted his texts.

Munoz did not present any evidence on his behalf. Instead, Munoz' strategy at trial was to use his cross-examination to attack the chain of custody of the cell phones and attack M.M.'s credibility. Nevertheless, the jury found Munoz guilty as charged on all counts.

Before sentencing, Munoz moved for a durational departure for his aggravated indecent liberties with a child sentence. Munoz argued that the trial court should depart from the mandatory minimum 25-year prison sentence and sentence him under the Kansas Sentencing Guidelines Act (KSGA) grid. At sentencing, the trial court granted Munoz departure to be sentenced on the KSGA grid. Based on Munoz' criminal history score of E, the trial court sentenced Munoz to 240 months' imprisonment followed by lifetime postrelease supervision for his aggravated indecent liberties with a child conviction. For both counts of electronic solicitation, the trial court sentenced Munoz to 234 months' imprisonment, running both counts concurrently and concurrent with his aggravated indecent liberties with a child sentence. Thus, the trial court sentenced Munoz to a controlling sentence of 240 months' imprisonment followed by lifetime postrelease supervision.

*Did the Trial Court Err in Instructing the Jury?*

Munoz' first argues that the trial court erred when it instructed the jury on the two counts of electronic solicitation because the electronic solicitation instructions included language that was broader than the language used in the complaint. Munoz argues that he was entitled to reversal of his two electronic solicitation convictions because this error was prejudicial. The State concedes that the electronic solicitation instructions were broader than the complaint. Nevertheless, the State argues that any error that resulted was harmless because the evidence against Munoz was overwhelming.

*Standard of Review*

When reviewing jury instruction challenges, an appellate court applies the following standard of review:

> """(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" [Citation omitted.]" *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016).

*Additional Law and Facts*

During the jury instruction conference, Munoz requested a lesser included offense instruction on his two counts of electronic solicitation of a child. K.S.A. 2015 Supp. 21-

5509(a) states that "[e]lectronic solicitation is, by means of communication conducted through the telephone, internet or by other electronic means, enticing or soliciting a person, whom the offender believes to be a child, to commit or submit to an unlawful sexual act." An "'unlawful sex act' means any rape, indecent liberties with a child, aggravated indecent liberties with a child, criminal sodomy, aggravated criminal sodomy, lewd and lascivious behavior, sexual battery or aggravated sexual battery." K.S.A. 2015 Supp. 21-5501(d). The State charged Munoz with a severity level 1 electronic solicitation, which occurs when the "offender believes the person to be a child under 14 years of age." K.S.A. 2015 Supp. 21-5509(b)(2). Yet, Munoz argued that he had provided evidence at trial that he believed M.M. to be "14 or more years of age but less than 16 years of age," which is a severity level 3 electronic solicitation charge under K.S.A. 2015 Supp. 21-5509(b)(1).

The State countered (1) that Munoz was not entitled to the severity level 3 electronic solicitation instructions and (2) that it had presented evidence establishing that Munoz solicited M.M. electronically with the goal of committing both rape and aggravated indecent liberties with a child. Accordingly, the State asked that the electronic solicitation jury instructions include language that the jury could find Munoz guilty if it found that Munoz texted M.M. to entice or solicit her to commit or submit to either aggravated indecent liberties with a child or rape. The trial judge decided that she wanted to think about the amended instructions that night.

The next day, when Munoz' trial resumed, the trial judge explained to counsel that the electronic solicitation statute, K.S.A. 2015 Supp. 21-5509, merely states that the defendant enticed the victim to "commit or submit to an unlawful sexual act," which included many sexual acts. The trial judge explained that the unlawful sex acts that she believed could apply in Munoz' case were rape, aggravated indecent liberties with a child, and indecent liberties with a child. Thus, the trial judge proposed amending the instructions for both severity level 1 electronic solicitation counts to include language

9

that the jury could find Munoz guilty of either count if it found he solicited M.M. electronically with the goal of committing or submitting to rape, aggravated indecent liberties with a child, or indecent liberties with a child.

The State did not object to the amended instructions. Munoz did. Munoz argued that the inclusion of the option to convict him for soliciting M.M. to commit or submit to rape and indecent liberties with a child was improper because the State had charged him with enticing or soliciting M.M., whom he believed to be under the age of 14, through an electronic device "to commit or submit to an unlawful sexual act, to-wit: Aggravated Indecent Liberties with a Child." Munoz argued that the State would need to amend the complaint before the rape and indecent liberties with a child language could be properly included in the electronic solicitation instructions.

The trial judge disagreed, asserting that because the electronic solicitation statute merely stated that the defendant was soliciting the victim to commit or submit to an unlawful sex act, the State was not required to amend the complaint because the underlying unlawful sex act was not an element of the crime. Accordingly, the trial court amended both counts of the severity level 1 electronic solicitation instructions to read as follows:

> "Mr. Munoz is charged . . . with electronic solicitation of a child believed to be less than 14 years old. Mr. Munoz pleads not guilty.
> "To establish this charge, each of the following claims must be proved:
> "1. Mr. Munoz by means of communication conducted through the telephone, internet, or by other electronic means enticed or solicited [M.M.] to commit or submit to an unlawful sex act.
> "2. Mr. Munoz did so intentionally, knowingly, or recklessly.
> "3. [M.M.] was a person whom Mr. Munoz believed was less than 14 years old.

"4. This act occurred on or about the 18th day of November 2013, in Shawnee County, Kansas.

"Unlawful sex acts include rape, aggravated indecent liberties with a child, or indecent liberties with a child.

"Rape is sexual intercourse with a child who is less than 14 years of age.

"Aggravated indecent liberties with a child means sexual intercourse with a child 14 or 15 years old. Aggravated indecent liberties with a child also means engaging in the following act with a child less than 14 years old: any lewd fondling or touching of the person of either the child or the offender done or submitted to with the intent to arouse or satisfy the sexual desires of the child or the offender, or both.

"Indecent liberties with a child means engaging in the following act with a child who is 14 or 15 years old: any lewd fondling or touching of the person either the child or the offender, done or submitted to with the intent to arouse or satisfy the sexual desires of either the child or the offender or both."

Last, the trial judge granted Munoz' request for instructions on the lesser included severity level 3 electronic solicitation offense.

*Did Munoz Fail to Establish the Error Resulting in Prejudice?*

Here, there is no dispute that Munoz preserved this argument for appeal. Moreover, there is no dispute that the electronic solicitation instructions included language that was broader than the complaint. "'A jury instruction on the elements of a crime which is broader than the information charging the crime is erroneous. Such an error may be excused only where the substantial rights of the defendant have not been prejudiced.'" *State v. Hart*, 44 Kan. App. 2d 986, 1005, 242 P.3d 1230 (2010) (quoting *State v. Wade*, 284 Kan. 527, Syl. ¶ 3, 161 P.3d 704 [2007]), *aff'd* 297 Kan. 494, 301 P.3d 1279 (2013). Thus, the only question we must decide is whether Munoz' substantial rights were prejudiced by the instructions.

11

In his brief, Munoz argues that this court cannot "be confident that the jury convicted [him] on the basis of the single alternative theory charged." Munoz argues that it is possible that the jury convicted him based upon a belief that he solicited M.M. to commit either a rape or indecent liberties with a child, both of which were unlawful acts not listed in his complaint. In making this argument, Munoz relies heavily on our Supreme Court's decision in *State v. Trautloff*, 289 Kan. 793, 802, 217 P.3d 15 (2009).

In *Trautloff*, Trautloff was charged with promoting the performance of sexually explicit conduct of a child under 14 years old by displaying an explicit picture of the child. 289 Kan. at 801. Yet, the jury instruction at his trial stated that he promoted the performance of sexually explicit conduct of a child by "'procuring, selling, providing, lending, mailing, delivering, transferring, transmitting, distributing, circulating, disseminating, presenting, producing, directing, manufacturing, issuing, publishing, displaying, exhibiting or advertising'" the picture of the child. *Trautloff*, 289 Kan. at 801-02. Thus, the elements in the instruction were far broader than those in the complaint.

On appeal, Trautloff argued that the broadened instruction resulted in prejudicial error. *Trautloff*, 289 Kan. at 801-03. The *Trautloff* court agreed, explaining:

> "The broad instruction allowed the jury to convict Trautloff of displaying or procuring or producing a photograph that included sexually explicit conduct by a child under 14 years of age. It did not compel the jury to find that Trautloff displayed a picture, as alleged in the complaint. As previously described, the evidence of 'procuring' or 'producing' a photograph was direct and overwhelming, while the evidence that Trautloff 'displayed' a photograph or video was minimal and circumstantial. Although Trautloff did not object to the instruction at trial, the instruction was clearly erroneous because we cannot be confident that the jury convicted him only on the basis of the single alternative theory charged and instructed upon. There exists a real possibility that the jury would have rendered a different verdict if the district court had instructed only as to displaying." 289 Kan. at 803.

12

Thus, the *Trautloff* court reversed because there was broadened language in the instruction *and* the court was unsure if the jury would have found Trautloff guilty but for the broadened instruction. That is, there seemed to be insufficient evidence supporting Trautloff's guilt under the theory alleged in the complaint.

As the State argues in its brief, however, Munoz' case is distinguishable from *Trautloff*. Unlike *Trautloff*, the evidence that Munoz solicited M.M. through texts with the goal of committing aggravated indecent liberties with a child, as charged in the complaint, was overwhelming. For example, on November 18 and 19, 2013, Munoz exchanged multiple texts about kissing and touching M.M. Munoz texted that he wanted to kiss M.M.'s whole body while she was in the shower. He texted M.M. that he could not "wait till [he] kissed those legs and that belly button." Aggravated indecent liberties with a child includes "[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender." K.S.A. 2015 Supp. 21-5506(b)(2)(A). Based on the preceding facts, evidence supported that Munoz was guilty of soliciting M.M. electronically to commit lewd fondling and touching of M.M. Thus, Munoz' case is distinguishable from *Trautloff* because there was very strong evidence that Munoz was guilty of electronic solicitation under the theory stated in the complaint.

Next, in *State v. Turberville*, 235 Kan. 993, 998, 686 P.2d 138 (1984), a case the State relies on in its brief, our Supreme Court held that an instruction that included language that was broader than the language in the complaint did not result in prejudice when the broadened instructions "were entirely supported by the evidence." Here, although Munoz' complaint never mentioned that Munoz solicited M.M. to commit rape, the evidence that Munoz intended to rape M.M. was overwhelming. Between November 18, 2013, and November 19, 2013, Munoz exchanged dozens of texts with M.M. about meeting up to have sex on November 22, 2013. Rape is "sexual intercourse with a child who is under 14 years of age." K.S.A. 2015 Supp. 21-5503(a)(3). M.M. was under the

13

age of 14. Thus, like in *Turberville*, although the instructions were broader than the complaint, the evidence supported including the broadened language in the electronic solicitation instructions.

Accordingly, the only broadened language not yet addressed by this opinion is the language instructing the jury that it could convict Munoz of either count of electronic solicitation if it believed that he solicited M.M. to commit indecent liberties by fondling a child aged 14 or 15 or aggravated indecent liberties by having sex with a child aged 14 or 15. Regarding this remaining broadened language, although neither party has recognized this in their respective briefs, it is readily apparent that the trial court included this language because of Munoz' lesser included offense jury instruction requests. Again, Munoz argued that he was entitled to instructions on the severity level 3 electronic solicitation, which requires that the defendant solicited a child believed to be aged 14 or 15. The trial court granted Munoz' request. Nonetheless, it seems Munoz' request confused the trial court. This is evident because when the trial court instructed the jury on the two counts of severity level 1 electronic solicitation, which required the jury to find that Munoz *believed M.M. to be under the age of 14*, the trial court told the jury that it could convict Munoz if it found that he solicited M.M. with the goal of committing indecent liberties by fondling M.M. *who was 14 or 15 years old* and aggravated indecent liberties by having sexual intercourse with M.M. *who was 14 or 15 years old*.

Clearly, this was a mistake. If the defendant believed the child he was soliciting was less than 14 years old *and* the child was actually less than 14 years old, then the defendant cannot solicit that child to commit an unlawful sex act against a 14- or 15-year old child. Such an outcome would be impossible. In the context of this case, it is undisputed that M.M. was 13 years old when the electronic solicitations allegedly occurred. If Munoz believed that M.M. was 13 years old when he solicited her to commit or submit to the unlawful sex acts, and she was actually 13 years old at that time, then the unlawful sex acts he could have possibly solicited M.M. to commit or submit to could not

14

have included indecent liberties with a child by fondling a child aged 14 or 15 or aggravated indecent liberties with a child by having sexual intercourse with child aged 14 or 15.

While this was obviously an error, because the jury found that Munoz believed that M.M. was under the age of 14, we can safely hold that the jury did not convict Munoz of the severity level 1 electronic solicitations based on a belief that he was soliciting M.M. to commit indecent liberties or aggravated indecent liberties with a child aged 14 or 15. In turn, we can safely hold that this broadened language, which was not mentioned in the complaint, had no bearing on the jury's decision to find Munoz guilty of the two counts of severity level 1 electronic solicitation.

To sum up, because of M.M.'s actual age and the jury's decision to find Munoz guilty of two counts of severity level 1 electronic solicitation, it is readily apparent that the jury did not convict Munoz of either count of electronic solicitation under a belief that he solicited M.M. to commit indecent liberties or aggravated indecent liberties with a 14- or 15-year old child. Thus, no prejudice could have resulted from this broadened language. Overwhelming evidence supported Munoz' guilt of soliciting M.M. to commit aggravated indecent liberties by engaging in lewd fondling of a child under 14, the theory of electronic solicitation for which he was charged. Thus, unlike the *Trautloff* case Munoz relies on, there was strong evidence supporting that Munoz was guilty as charged. Last, there was strong evidence that Munoz was guilty of many counts of soliciting M.M. electronically to rape her. Although the rape language was not included in the complaint, the *Tuberville* precedent indicates that the broadened language may not require reversal if the language was supported by the evidence.

Indeed, in *Turberville*, our Supreme Court held that an instruction that was broader than the charging document but supported by the evidence did not result in prejudice under the following circumstances:

15

"The defendant was fully apprised of the nature of the charges and was not misled in preparing his defense by the way the charges were described in the information. Turberville presented an alibi defense and does not indicate how his trial strategy would have been different had the language contained in the instruction been included in the information. The language contained in the court's instruction did not charge an additional crime, but stated several methods, or in this case different types of intent . . . . Under these circumstances any error in the instructions was harmless error." 235 Kan. at 998.

This court reached a similar conclusion in *Hart*, 44 Kan. App. 2d at 1005. The *Hart* court held that a broadened instruction did not prejudice Hart because (1) Hart failed to explain how the broadened instruction "compromised his ability to prepare and present his defense in his case," (2) Hart's remaining arguments were conclusory, and (3) "the appellate record fail[ed] to reveal any substantial prejudice to Hart." 44 Kan. App. 2d at 1005. In sum, a defendant's substantial rights are prejudiced by a broadened jury instruction only "[i]f a defendant's ability to prepare and present a defense has been compromised by an erroneously broadened jury instruction." *Wade*, 284 Kan. 527, Syl. ¶ 4.

Yet, as in *Tuberville* and *Hart*, Munoz has not explained how the broadened jury instruction prejudiced his ability to prepare or defend his case. His only argument on appeal centers on his unpersuasive argument that this court must reverse because it cannot "be confident that the jury convicted [him] on the basis of the single alternative theory charged." By failing to argue how the broadened electronic solicitation jury instructions prejudiced his ability to defend his case, he has abandoned any such argument on appeal. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (holding that an issue not briefed is deemed waived and abandoned). Moreover, by abandoning his prejudice argument, his argument that he is entitled to reversal of his electronic solicitation convictions based on the broadened language in the electronic solicitation jury instructions necessarily fails.

16

*Were Munoz' Electronic Solicitation Convictions Supported by Sufficient Evidence?*

Next, Munoz argues that there was insufficient evidence to support his two severity level 1 electronic solicitation convictions. First, Munoz argues that during its closing, the State limited what evidence the jury could consider to convict him for the electronic solicitations by pointing to specific texts that it believed supported his guilt for each count. Stated another way, Munoz argues that the State made an election as to the specific criminal acts the jury could rely on to convict him of the electronic solicitations. Then, Munoz argues that under the State's election, there was insufficient evidence to support his electronic solicitation convictions.

The State responds that it "was not limited to [the] two text messages" it referenced during closing, emphasizing that it requested and the trial court granted a unanimity instruction. The State further responds that even if it made an election, there was sufficient evidence to support both of Munoz' electronic solicitation convictions. Although the State made an election as to the specific criminal acts the jury could rely in convicting Munoz of the electronic solicitations, sufficient evidence support Munoz' guilt of both electronic solicitations under the State's election.

*Standard of Review*

Appellate courts review a criminal defendant's challenge concerning the sufficiency of the evidence in the light most favorable to the State. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). The defendant's conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *Laborde*, 303 Kan. at 6; *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

17

*Applicable Law*

When reviewing the sufficiency of the evidence, appellate courts should not reweigh evidence of a witness' credibility. This court will reverse a defendant's conviction in only the rarest case where no reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983). Moreover, even the gravest offense may be supported entirely upon circumstantial evidence so long as that circumstantial evidence provides a reasonable inference of the defendant's guilt. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

Again, to convict a defendant of a severity level 1 electronic solicitation, there must be evidence that the offender "by means of communication conducted through the telephone, internet or by other electronic means, entic[ed] or solicit[ed] a person, whom the offender believe[d] to be a child [under the age of 14], to commit or submit to an unlawful sexual act." K.S.A. 2015 Supp. 21-5509(a). Unlawful sex acts include "any rape, indecent liberties with a child, aggravated indecent liberties with a child, criminal sodomy, aggravated criminal sodomy, lewd and lascivious behavior, sexual battery or aggravated sexual battery." K.S.A. 2015 Supp. 21-5501(d).

*The State Elected the Specific Criminal Acts for Each Electronic Solicitation Count*

During closing arguments, the State made the following statement to the jury:

"I know you've heard a lot of testimony, you saw a lot of exhibits, but it really boils down to a few basic events on the text messages, on the iPhone, the solicitation charges Counts 2 and 3, I know you have this, it's State's exhibit No. 2, you don't need to read it with me. I'll read it for you. On line 1489 [Munoz] texts [M.M.], I can't wait to make love to you. There's your Count 2, your solicitation. You do have to unanimously

18

agree that is solicitation for rape. Yes, because, again, having sexual intercourse, making love to a child under 14 is rape.

> . . . .

> "Then the second solicitation, you'll find on your Page 526 of Exhibit 2, lines 1806 and 1807, where [Munoz] says, I can't wait till I kiss those legs and the belly button and everything else for that matter, like your breasts, they look nice. There's your second solicitation for aggravated indecent liberties."

Then, at the very end of closing, the State reiterated that the jury should hold "[Munoz] accountable for [the] electronic solicitation when he says he can't wait to make love to [M.M.] and then again when [Munoz] tells [M.M.] how he wants to kiss her legs and belly button and breasts too because they look nice."

Now, on appeal, Munoz argues that the State "elected which factual evidence the jury must have relied upon to convict [him]" based on the preceding statements. In support of his argument, Munoz cites *State v. Thomas*, 302 Kan. 440, 440-51, 353 P.3d 1134 (2015), and *State v. Dickson*, 275 Kan. 683, 696, 69 P.3d 549 (2003). In *Thomas*, our Supreme Court explained:

> "'[I]t is within the prosecutor's province to elect the evidence that the State wishes the jury to consider in determining the defendant's guilt on a particular count. Although the trial judge can tell a jury that the law mandates that it be unanimous on the particular evidence that will support the single count, it cannot tell the jury which specific evidence it must consider. In sum, it is the prosecutor that elects the evidence for the jury.'" 302 Kan. at 450-51 (quoting *State v. Owen*, No. 102,814, 2015 WL 1309978, at *7 [Kan. 2015] [unpublished opinion]).

In *Dickson*, in holding that there was no multiple acts error, our Supreme Court explained how the State made a functional equivalent to an election when the prosecutor told the jury a specific incident to support the crime charged. 275 Kan. at 696-97.

The State counters that it did not make an election because (1) the trial court gave the jury a unanimity instruction, and (2) the cases Munoz relies on in his brief involve multiple acts problems. The State's arguments, however, are flawed. To begin with, whether the trial court read a unanimity instruction is irrelevant. The issue Munoz has presented is whether the State limited the theories upon which the jury could convict him based upon its reference to the two texts during closing. He does not argue that his electronic solicitation convictions cannot stand because his case involved multiple acts and the trial court failed to give a unanimity instruction. Second, although Munoz relies on multiple acts cases, those cases are still informative in situations where the State has made an election during closing.

Moreover, in this case, it is readily apparent that the State made an election during closing because it told the jury to focus on two specific texts. First, it told the jury to focus on the text where Munoz texted M.M. that he "[could not] wait to make love to [her]." The State said that this text was sufficient to find Munoz guilty of the first count of electronic solicitation because it supported that Munoz was soliciting M.M. to commit rape. Second, the State told the jury to focus on the text where Munoz texted M.M. that he wanted to kiss her legs, belly button, breasts, and everything else. The State stated that this text was sufficient to find Munoz guilty of the second count of electronic solicitation because it supported that Munoz was soliciting M.M. to commit aggravated indecent liberties with a child. Then, at the end of its closing, the State repeated that it wanted the jury to consider those two texts.

Furthermore, although Munoz has not made this argument, while discussing the unanimity instruction during the jury instruction conference, the prosecutor specifically stated that it was "[his] intention, to clearly point out what the Sate believes constitutes the violation of the two separate [electronic solicitation counts] and distinguish them." Then, the prosecutor requested that the trial court provide the jury with a unanimity

20

instruction anyway just in case he did not "specifically point out a particular solicitation for [both counts.]"

Consequently, it does not matter that a unanimity instruction was given or that the cases Munoz relies on involve multiple acts issues. All that matters is that the State made an election during closing. Thus, we must determine whether sufficient evidence supported Munoz' convictions under the theories the State elected.

*Did Sufficient Evidence Support Munoz' Convictions?*

Munoz contends that insufficient evidence supported his convictions because the texts the State relied on merely indicated that he wanted to have sex with M.M. and that he wanted to kiss M.M.'s body. Munoz argues that his comments in those texts in no way solicited M.M. to have sex with him or allow him to kiss her body.

Under the electronic solicitation statute, a defendant must entice or solicit the person believed to be a child. K.S.A. 2015 Supp. 21-5509(a). Entice is not defined in the criminal code, but Black's Law Dictionary defines entice as "[t]o lure or induce . . . to wrongfully solicit (a person) to do something." Black's Law Dictionary 649 (10th ed. 2014). Under K.S.A. 2015 Supp. 21-5111(cc), "solicit" means to "command, authorize, urge, incite, request or advise another to commit a crime." Munoz argues that because his texts were just "statements" of what he wanted to do, his texts could not be defined as enticements or solicitations. Munoz' argument hinges on a belief that an adult cannot entice or solicit a child unless there is a formal request by the adult to the child to commit or submit to unlawful sex acts. This argument is flawed. Under the electronic solicitation statute, a defendant does not have to make a formal request to a child to commit or to submit to an unlawful sex act. A defendant's statement implying that he or she wants the child to engage in an unlawful sex act can establish the enticing or soliciting element.

21

In the context of this case, the statement "I can't wait to make love to you," supports that Munoz was inducing M.M. to have sex with him, which would be a rape given her age. In general, when X person tells Y person that he or she would like to "make love" to Y, X does so with the goal of ultimately having sex with Y. Here, Munoz told M.M. that he could not wait to "make love" to her because he wanted M.M. to have sex with him; by telling M.M. this, he was urging her to have sex with him. Additionally, the phrase "I can't wait" generally implies that a person has been making plans to do or has been strongly considering doing the thing that the person cannot wait to do. Regarding the Munoz' text, "I can't wait till I kiss those legs and that belly button and everything else for that matter like your breast they look nice [*sic*]," again, a person does not tell another person that the person cannot wait to kiss the other person without some hope that the person will actually kiss the other person. Here, Munoz sent this text to M.M. because he wanted to kiss her body and he was hoping that she would let him kiss her body. Consequently, Munoz sent this text to M.M. with the goal of enticing or soliciting M.M. to allow him to commit aggravated indecent liberties by kissing her body.

Here, the State elected a specific theory for convicting Munoz. There can be no doubt that sufficient evidence supported that Munoz was enticing or soliciting M.M. so he could commit a rape and aggravated indecent liberties against her. Munoz texted M.M. that he could not "wait to make love to [her]" and that he could not wait" to "kiss [her] legs and [her] belly button and everything else, . . . like [her] breast" during a discussion through text messages that spanned 2 days about meeting up the following Friday. The text messages revealed that M.M. and Munoz' planned how Munoz could stealthily pick M.M. up in the early morning hours of Friday, bring M.M. to some motel, and engage in various sex acts with one another. Additionally, during trial, M.M. testified about how she and M.M. had been texting each other about meeting up "[t]o have sex" on Friday.

As a result, Munoz' arguments about insufficient evidence supporting his electronic solicitation convictions are unconvincing.

22

*Did the Prosecutor Make a Misstatment of Law That Requires Reversal of Munoz'*
*Convictions?*

Next, Munoz argues that the following two comments made by the prosecutor during closing arguments were misstatements of the law entitling him to reversal of all of his convictions:

> 1. "[T]he law protects 13-year-olds. That's the reason why the law protects any child under the age of 14. Adults cannot have any sort of sexual contact with any child under 14 years of age. There's no exception to that, period. If you do, it's a crime. That's the law in Kansas."
> 2. "If you have sexual intercourse with a child under 18, it's rape."

The State counters the prosecutor's comments were within the wide latitude of language and manner given to prosecutors during closing arguments. Alternatively, the State argues that if the prosecutor's comments were improper, the effect of the comments were harmless.

*Standard of Review*

Our Supreme Court altered the standard for reviewing prosecutorial conduct challenges when it decided *State v. Sherman*, 305 Kan. 88, Syl. ¶ 4, 378 P.3d 1060 (2016), on September 9, 2016. As a result, the *Sherman* court overruled the former prosecutorial misconduct standard of review stated in *State v. Tosh*, 278 Kan. 83, 91 P.3d 1204 (2004). Moreover, the *Sherman* court renamed judicial review of prosecutorial conduct from "prosecutorial misconduct" to "prosecutorial error." 305 Kan. 88, Syl. ¶ 5.

Munoz filed his appellant's brief on June 13, 2016. Accordingly, in arguing that the prosecutor's conduct was improper, Munoz relies on the old *Tosh* prosecutorial misconduct standard. The State, however, filed its appellee's brief on October 13, 2016,

23

after the new *Sherman* standard came into effect. Consequently, the State has analyzed Munoz' claim under the new *Sherman* standard. Munoz has not filed a supplemental brief in which he argues his claim under the new *Sherman* standard.

Since the *Sherman* decision, our Supreme Court has continued to use the old *Tosh* standard in situations where *Sherman* had not been decided until the case at hand had been argued and fully submitted for decision. See *State v. Carter*, 305 Kan. 139, 380 P.3d 189 (2016), and *State v. Netherland*, 305 Kan. 167, 379 P.3d 1117 (2016). Nevertheless, in *State v. Kleypas*, 305 Kan. 224, 314-16, 382 P.3d 373 (2016), our Supreme Court decided to apply both the old *Tosh* prosecutorial misconduct standard and the new *Sherman* prosecutorial error standard given that Kleypas' case was submitted and argued while *Tosh* was still good law but decided after the *Sherman* decision.

Because the parties have argued different standards in their respective briefs, we will analyze Munoz' claim under both the old *Tosh* standard and the new *Sherman* standard.

The old *Tosh* standard involved reviewing prosecutorial misconduct claims in a two-step process:

"First, an appellate court determines whether there was misconduct, *i.e.*, whether the prosecutor's comments were outside the wide latitude allowed in discussing the evidence. Second, if misconduct is found, the appellate court determines whether those comments compel reversal, *i.e.*, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. [Citation omitted.]

"In applying the second step and determining whether the defendant was denied a fair trial, an appellate court considers three factors: (1) whether the misconduct was gross and flagrant, (2) whether it was motivated by prosecutorial ill will, and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely

have had little weight in the minds of jurors. No one factor is controlling. *Kleypas*, 305 Kan. at 314 (citing *Tosh*, 278 Kan. at 85, 93, and 97).

The second step of the *Tosh* standard also required that the State establish that the misconduct was harmless, which means that there was no reasonable possibility that the misconduct affected the verdicts of the case. *Kleypas*, 305 Kan. at 314-15.

The new *Sherman* standard still requires appellate courts to review claims of prosecutorial error in a two-step process. The first step under the *Sherman* standard remains the same as the old *Tosh* standard; appellate courts "must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." *Sherman*, 305 Kan. at 109. Yet, the second step of the *Sherman* standard streamlines the second step of the old *Tosh* standard, simply requiring that the State "demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" *Sherman*, 305 Kan. at 109.

Thus, the first step under the old *Tosh* and the *Sherman* standard are identical. The second step under the *Sherman* standard, however, does not require courts to consider whether the comment in question was gross and flagrant, motivated by ill will, or affected the verdict given the weight of the evidence. Under the *Sherman* standard, courts simply skip to the harmlessness test under the second step of *Tosh*.

*Preservation*

Munoz did not object to the two statements in question during the prosecutor's closing. Nevertheless, appellate courts will review claims of prosecutorial misconduct,

25

which is now called prosecutorial error, when challenged for the first time on appeal. *State v. Roeder*, 300 Kan. 901, 932, 336 P.3d 831 (2014), *cert. denied* 135 S. Ct. 2316 (2015).

*First Step Analysis*

The first comment that Munoz takes issue with is the prosecutor's comment during closing that "[a]dults cannot have any sort of sexual contact with any child under 14 years of age" without exception. Munoz argues that the comment was a misstatement of law because there is an exception to the general rule that adults cannot have sexual contact with children under the age of 14. That exception occurs when the child under the age of 14 is married to the adult. Thus, Munoz argues that the prosecutor made a misstatement of law by saying no such exception existed. In this respect, Munoz is correct. Under K.S.A. 2015 Supp. 21-5506(e), "a defense to a prosecution of indecent liberties with a child, as defined in subsection . . . (b)(3)(A) [is] that the child was married to the accused at the time of the offense." Munoz was charged and convicted of aggravated indecent liberties with a child in violation of K.S.A. 2015 Supp. 21-5506(b)(3)(a), meaning the preceding exception to the general rule existed. As a result, the State technically misstated the law when it made this comment.

The second comment that Munoz takes issue with is the prosecutor's comment during closing that "[i]f you have sexual intercourse with a child under 18, it's rape." Munoz argues that this was a misstatement of law for the following reasons: (1) the marriage exception under K.S.A. 2015 Supp. 21-5506(e) applies to this comment as well; and (2) the age of consent in Kansas occurs when a child turns 16 year old. Again, Munoz is correct because the prosecutor's comment was a technical misstatement of law. If the adult was married to the child under age 18, then that adult has a defense to committing certain sex crimes against that child. Also, the State of Kansas does not

26

criminalize consensual sexual contact between adults and a child once that child has turned 16 years old. See K.S.A. 2015 Supp. 21-5503-K.S.A. 2015 Supp. 21-5506.

Because our Supreme Court has consistently held that a prosecutor's comments misstating the law are outside the wide latitude of language and manner given to prosecutors during closing, Munoz argues that the preceding comments constituted prosecutorial misconduct. See *Carter*, 305 Kan. at 151 (holding that a "prosecutor 'cross[es] the line by misstating the law'"). Despite recognizing that the prosecutor's comments were technical misstatements of law, the State counters that the prosecutor did not commit error by making those comments.

First, the State emphasizes that the comments were not deliberate misstatements of the law. The State cites *State v. Gunby*, 282 Kan. 39, 63, 144 P.3d 647 (2006), for the proposition that a "*deliberate misstatement* of the governing law is outside the considerable latitude given to prosecutors." (Emphasis added.) This court made a similar holding in *State v. Ramirez*, 50 Kan. App. 2d 922, 942, 334 P.3d 324 (2014), *rev. denied* 304 Kan. 1021 (2016), stating that "[a] prosecutor steps outside the considerable latitude given to prosecutors if he or she *deliberately* misstates the controlling law." The *Ramirez* court further indicated that there was a difference between a slip of the tongue, which is not deliberate and within the scope of propriety, and a deliberate misstatement of law. 50 Kan. App. 2d at 942. Here, nothing indicates that the prosecutor deliberately tried to undermine Munoz' case by making the technical misstatements of law.

Second, the State points out that the comments in question had nothing to do with the controlling law of the case. Both the *Gunby* and *Ramirez* courts held that there was a difference between misstating the controlling law of the case and misstating noncontrolling law. Regarding the comment about any sexual conduct between an adult and child under the age of 14 years old being criminal, the State argues that the marriage exception had no application in Munoz' case because M.M. and Munoz were not married.

27

Regarding the comment about any sexual conduct between an adult and child under the age of 18 years old being criminal, the State argues that because M.M. was 13 years old, it was and is irrelevant that the age of consent in Kansas is 16 years old. Although the State made technical misstatements of law, the misstatements merely concerned laws that did not apply in Munoz' case. That is, the misstatements concerned noncontrolling law.

Third, the State cites to *State v. Naputi*, 293 Kan. 55, 59, 260 P.3d 86 (2011), for the proposition that when determining if a prosecutor's comments fell within the wide range of propriety, courts must read the comments in their full context. The State argues that although it made two technical misstatements of noncontrolling law, the State made many correct statements of the controlling law in Munoz' case. Therefore, the State argues that when looking at the prosecutor's statements as a whole, the two technical misstatements of noncontrolling law were within the wide latitude of discretion and propriety.

In short, the State is correct. As already stated, the marriage exception did not apply in the context of Munoz' case. Thus, when the prosecutor stated that "[a]dults cannot have any sort of sexual contact with a child under 14 years of age," that was correct in the context of Munoz' case. Moreover, when the prosecutor stated that sexual intercourse with a child under age 18 was rape, he did so only after stating that "we know what rape is, sexual intercourse with any child under the age of 14, consent or not." Thus, in context, it is readily apparent that the prosecutor correctly told the jury about the controlling law in Munoz' case.

Although Munoz correctly argues that the State made comments which were technical misstatements of law, those comments were not outside the wide latitude of manner and language granted to a prosecutor during closing arguments. This is because (1) the comments were not deliberate, (2) the comments were not about controlling law, and (3) the comments were incredibly insignificant when viewed in the context of the

28

prosecutor's entire closing during which the prosecutor correctly stated the controlling law. As a result, the prosecutor did not commit misconduct under the first step of the old *Tosh* standard or error under the first step of the new *Sherman* standard by making either comment. Because no misconduct or error resulted, no further analysis under the second step of the *Tosh* or *Sherman* standards is necessary.

*Is Munoz Entitled to Reversal of His Convictions Based on Cumulative Error?*

Finally, Munoz argues that he is entitled to reversal of his convictions under the doctrine of cumulative error based on the following errors: (1) the trial court's erroneous decision to provide the jury with the broadened electronic solicitation jury instructions; and (2) the prosecutor's misstatements of law during closing. Munoz argues that although those alleged errors might not require reversal individually, taken together the errors amount to cumulative error. The State argues that if there were errors, the errors did not prejudice Munoz to an extent that he was denied a fair trial. Additionally, the State argues that Munoz is not entitled to reversal of his convictions because the evidence against him was overwhelming.

When reviewing whether cumulative errors require reversal of a defendant's convictions, an appellate court must determine whether the totality of the circumstances establish that the cumulative errors substantially prejudiced the defendant, denying the defendant a fair trial. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). "In making the assessment of whether the cumulative errors are harmless error, an appellate court examines the errors in the context of the record as a whole considering how the trial judge dealt with the errors as they arose (including the efficacy, or lack of efficacy, of any remedial efforts); the nature and number of errors committed and their interrelationship, if any; and the strength of the evidence." *Holt*, 300 Kan. at 1007.

No cumulative error can exist if the defendant has established only a single error. *State v. Williams*, 299 Kan. 509, 566, 324 P.3d 1078 (2014), *overruled in part on other grounds by State v. Owen*, 304 Kan. 773, 375 P.3d 332 (2016). Moreover, prejudicial error will not be found in circumstances where the evidence against the defendant is overwhelming. *Holt*, 300 Kan. at 1007.

As considered, the trial court erred when it gave the jury instructions on electronic solicitation with language broader than the language in the complaint, but Munoz failed to establish that the error resulted in prejudice. Moreover, the prosecutor's comments about sex with a child under the age of 14 always being a crime and sex with a child under the age of 18 always being a crime, while technical misstatements of law, were within the wide latitude of language and manner given to prosecutors during closing arguments. Thus, on appeal, Munoz has established only one error—the broadened jury instructions error. Because no cumulative error can result from one error, Munoz has failed to establish cumulative error on appeal. *Williams*, 299 Kan. at 566.

Affirmed.